# EXHIBIT A

LEXSEE 2001 U.S. DIST. LEXIS 10299

**LARRY D. MARVEL, Plaintiff, v. ROBERT SNYDER and BRUCE BURTON, Defendants.**

**C.A. No. 99-442-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 10299*

**July 24, 2001, Decided**

**DISPOSITION:** [*1] Marvel's Motions to Amend Complaint GRANTED. Marvel's Motion to Supplement Complaint GRANTED in part and DENIED in part. Defendants' motion to dismiss DENIED in part and GRANTED in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant warden and lieutenant pursuant to *42 U.S.C.S. § 1983*, alleging he was removed from his job in retaliation for filing a personal injury lawsuit against the warden and prison. Defendants moved to dismiss. Plaintiff filed two motions to amend, and for leave to file a supplemental complaint.

**OVERVIEW:** Plaintiff was removed from his job after searches revealed that he possessed bleach. Plaintiff's first motion to amend argued that because it was determined that he was not guilty, it followed that his removal was retaliatory. The court granted the motion as it did not appear to be in bad faith. His second motion to amend suggested that a subsequent shakedown was also retaliatory. The court denied it because, in part, later events did not appear sufficiently factually related to the original complaint. As for his motion for leave to file a supplemental complaint, plaintiff's attempt to add averments concerning a third alleged shakedown and to add additional defendants was denied. However, the portion of the motion related to plaintiff's transfer to a higher disciplinary tier was granted. The claims seeking money damages against defendants in their official capacities were dismissed, but not as to their individual capacities. The court would not dismiss the retaliation claim under qualified immunity. The court denied the defendants' motion for summary judgment with respect to the retaliation claim. It dismissed plaintiff's eighth amendment claims and his state tort claims.

**OUTCOME:** The court granted only the first of plaintiff's two motions to amend the complaint. It granted his motion to supplement the complaint in part and denied it in part. It granted the defendants' motion for summary judgment in part and denied it in part.

**CORE TERMS:** cell, shakedown, inmate, retaliation, bleach, prison, warden, housing, amend, environmental, crew, prisoner, summary judgment, motion to dismiss, retaliatory, supervisor, constitutional right, disciplinary, supplemental, Fourteenth Amendment, constitutional rights, personal injury, personal injury action, motion to amend, infraction, Eleventh Amendment, constitutionally protected, injunctive relief, prisoner-plaintiff, favorable

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] A Fed. R. Civ. P. 12(b)(6) motion can be converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] Under Fed. R. Civ. P. 56, the court can only grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. A fact is "material" if, under the governing law, it might affect the outcome of the case. On summary judgment, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences

and resolving all reasonable doubts in favor of that party. In considering the motion, the district court must read a pro se plaintiff's allegations liberally and apply a less stringent standard to the pleadings of a pro se plaintiff than to a complaint drafted by an attorney.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN3] In order to recover against defendants under 42 U.S.C.S. § 1983, a plaintiff must show that he was deprived of a constitutional right by a person acting under the color of state law.

*Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings*
[HN4] See Fed. R. Civ. P. 15(d).

*Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings*
[HN5] The grant of an application under Fed. R. Civ. P. 15(d) is within the sound discretion of the court. Leave to supplement should be granted if it will promote the just disposition of the case, will not cause undue prejudice or delay, and will not prejudice the rights of any parties. The court has broad discretion in the application of Rule 15(d) and should apply it in a manner designed to secure the just, speedy and inexpensive determination of every action. Therefore, unless the court finds undue delay, bad faith or dilatory motive on the part of the movant or undue prejudice to the opposing party an appropriate exercise of a court's discretion should result in affording a plaintiff the opportunity to test its claim on the merits.

*Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings*
[HN6] The standard applicable to motions to amend under Fed. R. Civ. P. 15(d) is essentially the same standard that applies to Fed. R. Civ. P. 15(a).

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN7] It is axiomatic that state officials acting in their official capacities are not "persons" for the purposes of 42 U.S.C.S. § 1983.

*Civil Procedure > State & Federal Interrelationships > Amendment 11*
[HN8] Monetary damage claims against state officials in their official capacity are barred by the Eleventh Amendment.

*Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials*
[HN9] The doctrine of qualified immunity requires an initial determination of whether the statutory or constitutional right violated was clearly established. Next, the court must consider whether a reasonable person would have been aware of that right.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN10] The United States Court of Appeals for the Third Circuit recently defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. The court established a three prong test for determining whether retaliation has occurred. First, the prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN11] The second prong of the Rauser analysis requires a prisoner litigating a retaliation claim to show that he has suffered some adverse action at the hands of prison officials. A prisoner-plaintiff can satisfy this requirement by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN12] The third aspect of the Rauser test requires a prisoner-plaintiff to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The United States Supreme Court used the same burden shifting framework in deciding a retaliation case that arose in the public employment context. The United States Court of Appeals for the Third Circuit has also utilized this framework in the prisoner retaliation context. Under this regime, the prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. The burden will then shift to the defendant to prove by a preponderance of the evidence that he would have taken the same disciplinary action even in the absence of the protected activity. However, this

framework must also take the difficult task of prison administration into account.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN13] A prison regulation that impinges on the constitutional rights of an inmate is valid if it is reasonably related to legitimate penological interests.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN14] With reference to a prisoner's cause of action for retaliation, a prisoner must initially demonstrate that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision. If, however, the prison officials prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. The United States Court of Appeals for the Third Circuit considered the temporal proximity between the prisoner-plaintiff's insistence on his constitutional rights and the alleged adverse actions he suffered in considering the causation prong of this analysis.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction*
[HN15] The court has supplemental jurisdiction over state tort claims if they arise out of the same case or controversy under *28 U.S.C.S. § 1367*(a).

*Civil Procedure > State & Federal Interrelationships > Amendment 11*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction*
[HN16] Where the state claims are against the agency or official in their official capacity, the Eleventh Amendment bars the exercise of federal jurisdiction and supplemental jurisdiction over the party.

**COUNSEL:** Larry D. Marvel, Plaintiff, Pro se, Smyrna, Delaware.

For Defendants: Robert F. Phillips, Esq., THE STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM OPINION**

July 24, 2001.
Wilmington, Delaware.

**SLEET, District Judge**

**I. INTRODUCTION**

Larry D. Marvel ("Marvel"), the plaintiff in this civil rights action, is presently incarcerated at the Delaware Correctional Center ("DCC") located in Smyrna, Delaware. On July 12, 1999, he filed a *pro se* complaint with this court against DCC Warden Robert Snyder and Correctional Lieutenant Bruce Burton ("the defendants") pursuant to *42 U.S.C. § 1983*. Marvel alleges that he was removed from his job with the environmental crew in retaliation for filing a personal injury lawsuit against the warden and the DCC. n1 He claims that the removal violated his Fourteenth Amendment right to due process. Marvel [*2] was removed from his job after a strip search and a random search of his cell revealed that he was in possession of bleach, a violation of the DCC housing rules. In addition to the Fourteenth Amendment due process claim, Marvel has alleged a Fourteenth Amendment equal protection claim and asserted that his Eight Amendment rights have been violated. Additionally, Marvel has alleged the following state law torts: battery, negligence, deliberate indifference, conspiracy and intentional infliction of emotional distress. Marvel seeks injunctive relief in the form of a declaratory judgement ordering him to be reinstated with the environmental crew as well as $ 500,000 in damages from each defendant. n2

---

n1 The personal injury suit is C.A. No.99-113-GMS. Marvel also served a copy of the complaint on the Delaware Attorney General's Office on September 8, 1999. The record is unclear as to whether service was accepted on behalf of the named defendants or if Marvel wanted to add the Delaware Attorney General as a defendant in this action. If this is the case, the court will not allow the Attorney General to be named as a defendant in this action because Marvel has not alleged any facts relating to her actions against him.

[*3]

n2 Marvel has sued the defendants both in their official and individual capacity. The court presumes that Marvel is seeking monetary dam-

ages and injunctive relief from the defendants in their official capacity. To the extent that Marvel is seeking to recover damages from the defendants in their official capacity, the court will dismiss these claims because the defendants are entitled to sovereign immunity under the Eleventh Amendment. *See, e.g., Pena v. Gardner, 976 F.2d 469, 472-73 (9th Cir. 1992)* (citing, inter alia, *Edelman v. Jordan, 415 U.S. 651, 663, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974))*; *Orum v. Haines, 68 F. Supp. 2d 726, 729 (N.D. W.Va. 1999)* (citing *Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989))*.

There are several motions presently before the court. The defendants filed a motion to dismiss on November 8, 1999 (D.I. 9). n3 In their motion, the defendants argue that it is the policy of the DCC to employ inmates who follow the institutional rules and participate in [*4] rehabilitation programs. The defendants also assert that Marvel admits that his possession of bleach was in violation of the DCC housing regulations, and that he has refused to participate in prison rehabilitation programs. According to the defendants, an inmate worker who is found in violation of the DCC rules or regulations or who refuses to participate in rehabilitation programs maybe suspended from his job. Further, it appears that inmates may be removed from their jobs by security officers. The defendants argue that Lt. Burton did not terminate Marvel from his job. Instead, they contend, Marvel was "classified out of the environmental crew for his failure to participate in his treatment program on November 4, 1999." *See* Def. Op. Br. Mot. to Dismiss at P9. Additionally, the defendants argue that Marvel has not established that he has a protected liberty interest in employment or, if he does, that his interest was violated. The defendants also argue that Lt. Burton was unaware that Marvel had previously filed a personal injury suit. Finally, they point out that Burton was not named as a defendant in that action.

> n3 In accordance with *Fed. R. Civ. P. 12(b)*, the defendants' motion to dismiss will be treated as a motion for summary judgement because they have attached materials outside the pleadings. Marvel's response also contains materials outside the pleadings. *See infra.*

[*5]

Marvel has also filed several motions. On November 15, 1999, he filed a motion to amend the complaint (D.I. 11). In this motion, Marvel argues that because it was determined in a disciplinary hearing that he was not guilty of the alleged violation the DCC housing codes relating to the May 31, 1999 cell shakedown it follows that his removal from his job was a retaliatory action. On July 24, 2000, Marvel filed a second motion to amend his complaint (D.I. 22) suggesting that a subsequent shakedown of his cell on July 2, 2000, was also a retaliatory action. On October 16, 2000, Marvel filed a motion for leave to file a supplemental complaint (D.I. 26). In his motion, Marvel attempts to add defendants as well as allege that a third shakedown n4 and his transfer to a disciplinary section of the DCC were also retaliatory actions in response to his filing of the civil action against the prison.

> n4 Marvel alleges that this shakedown of his and another inmate's cells occurred after he was found to be in the other inmate's cell.

[*6]

The court will grant Marvel's motions to amend in part, and will grant Marvel's motion to supplement the complaint in part. Marvel's attempt to add averments concerning the third alleged cell shakedown, and to add additional defendants to this action will be denied. However, since the portion of the motion alleging that Marvel's transfer to a higher disciplinary tier are essential facts to the retaliation claim, that portion of the motion will be granted. The defendants' motion to dismiss will be granted in part and denied in part. The following sections explain the court's ruling.

## II. STANDARD OF REVIEW

Although the defendants filed a motion to "dismiss," they have attached materials outside of the pleadings to their submission. Marvel has also submitted materials outside of the pleadings in his complaint, his opposition to this motion, and subsequent filings. Further, Marvel argues that when the record is viewed in the light most favorable to him, a reasonable jury could return a verdict in his favor. For these reasons, the court will treat the pending motion to dismiss as one for summary judgment. *See* Fed. Civ. P. 12(b) (noting that [HN1] a Rule 12(b)(6) motion can be [*7] converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers); *See also Steelman v. Carper, 124 F. Supp. 2d 219, 225 (D. Del. 2000)* (citing *Boyle v. Governor's Veterans Outreach and Assistance Center, 925 F.2d 71, 74-75 (3d Cir. 1991))* (construing state's motion to dismiss as one for summary judgement because parties refer to matters outside pleadings).

[HN2] Under *Federal Rule of Civil Procedure 56*, the court can only grant summary judgment if there are

no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56(c)*. An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. *See, e.g., Robinson v. Klotz, 1995 U.S. Dist. LEXIS 717, Civ.A.No. 94-1993, 1995 WL 27479*, at *1 (E.D. Pa. Jan. 23, 1995) (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986))*. A fact is "material" if, under the governing law, it might affect the outcome of the case. *See id.* (citing same). On summary judgment, the court must look at the evidence [*8] in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party. *See, e.g., Gutridge v. Chesney, 1998 U.S. Dist. LEXIS 6647, Civ. A. No. 97-3441, 1998 WL 248913*, at *1 n.1 (E.D. Pa. May 8, 1998). In considering the motion, the district court must read a *pro se* plaintiff's allegations liberally and apply a less stringent standard to the pleadings of a *pro se* plaintiff than to a complaint drafted by an attorney. *See Haines v. Kerner, 404 U.S. 519, 520-521, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); see also Gibbs v. Roman, 116 F.3d 83, 86 n.6 (3d Cir. 1997)*. With these standards in mind, the court turns to a discussion of the most relevant facts giving rise to this lawsuit.

### III. FACTUAL AND PROCEDURAL BACKGROUND

Marvel filed a personal injury action, 99-113-GMS, against, *inter alia*, Robert Snyder on March 2, 1999. Warden Snyder signed a return of service on May 18, 1999. In reference to that suit, Michael D. Shaffer, Esq. sent a letter to the Medical Services Department of the DCC on May 21, 1999. In his letter, Mr. Shaffer asserted that he represented Marvel [*9] in the personal injury claim, and he requested copies of any medical documents relating to the injury associated with the case. n5 In his complaint, Marvel alleges that on May 31, 1999, Lt. Burton came to his cell, strip searched him, handcuffed him and then began to search his cell. While Burton was searching Marvel's legal files he stated, "You like to sue people, do you? . . . Well, sue me! . . . "Got a problem with that? . . . I don't think so." In the course of the shakedown Burton, discovered and confiscated several items, including bleach stored in a shampoo bottle, "Voodoo" brand ink, and a black marker. Bleach is considered a dangerous contraband item due to its potential to blind, poison, or otherwise injury a DCC staff member or other inmate. Possession of bleach is a direct violation of the DCC housing codes. As a result of this incident, Burton filled out a report requesting that Marvel be terminated from his position on the environmental crew for possessing bleach. n6 Marvel asserts that Burton told him he was going to "take" his job because of the housing code violation. However, Marvel suggests that he was actually relieved of his job in a way that violated the established [*10] prison procedures regarding inmate termination.

n5 Mr. Shaffer has not officially notified the court that he will be representing Marvel in either the personal injury suit or the retaliation claim. Although the record does not clearly indicate the nature of Mr. Shaffer's relationship with Marvel, it does show a letter from Mr. Shaffer to the Medical Services Department of the DCC regarding a claim for personal injuries. For purposes of the instant motion, the relationship between Marvel and Snyder is less relevant than the contents of the May 21, 1999 letter and the alleged actions of the defendants.

n6 Burton's incident report dated May 31, 1999, stated that after discovering the bleach in the shampoo bottle, he asked Marvel where he got the bleach. Marvel replied that he assists the head of the environmental crew in passing out bleach during the day shift. Burton then asserted that he called Cruz, another inmate, who informed him that he does not pass out bleach on the day shift and that Marvel was lying. Burton's report also suggested that he was informed by Sgt. Willoman that Marvel has been engaged in selling bleach to other prisoners.

[*11]

The next day, Marvel contends that Burton took the housing infraction write up to Sgt. Bryan Pope, Marvel's immediate supervisor on the environmental crew. According to Marvel, Sgt. Pope then called the Adjustment Board and spoke with a disciplinary officer, Lt. Reynolds. Reynolds explained to Pope that Marvel should return to work and Sgt. Pope ordered Marvel to do so. Marvel claims that the same night (June 1, 1999) Burton questioned Marvel in his office about why he had returned to work against his orders. Marvel avers that Lt. Burton said, "Do not let me catch your white ass on the compound again or I'll put you where I know you'll be! [referring to isolation or the "hole"]." Marvel claims that Lt. Burton told him that would never return to his job on the environmental crew. According to Marvel, on June 4, 1999, Lt. Seacord, Marvel's work site supervisor, informed him that Lt. Burton had approached Warden Snyder, and they had overridden the established termination policies. Marvel has also noted that subsequent to these events, Lt. Seacord was relieved from his official duties as work site supervisor.

In addition to the information offered in the complaint, Marvel has offered [*12] additional facts to sup-

Case 1:04-cv-00203-GMS   Document 14-2   Filed 03/02/2006   Page 7 of 12

Page 6
2001 U.S. Dist. LEXIS 10299, *

port his case. n7 It seems that a disciplinary hearing was subsequently held to determine whether any of Marvel's property seized was in fact contraband. Marvel claims that on October 15, 1999, the disciplinary hearing committee found that he was "not guilty" of violating prison regulations. n8 According to Marvel, it was determined that the bleach was issued to him by his work supervisor and was to be used to clean the showers after the 10:00 p.m. lockdown that evening. Additionally, Marvel contends that the black marker was issued to him by Sgt. Pope in order to label state cleaning equipment, and the "Voodoo" brand ink was actually an art supply that he was allowed to possess.

> n7 The remaining factual information has been provided in Marvel's response to the defendants' motion to dismiss as well as his various motions to amend and supplement his complaint.
>
> n8 Marvel has attached a document dated October 15, 1999 labeled "Exhibit E" to his response to the defendants' motion to dismiss (D.I. 19) which is dated October 15, 1999. The document, titled "Record of Disciplinary Hearing," notes that the hearing officers' decision was "not guilty." Marvel has filed an additional copy of this document in his first motion to amend the complaint. It is not entirely clear, however, that Exhibit E refers to the incident regarding Marvel's possession of the bleach. The defendants have not addressed this issue in any of their filings with the court. Given this absence, and viewing the evidence in a light most favorable to Marvel, the court presumes the "not guilty" finding to refers to the incident in question.

[*13]

Marvel asserts that on October 8, 1999, he was approached by his lead area work supervisor, Lt. Seacord, who was returning from a meeting with Warden Snyder in reference to Marvel's job with the environmental crew. Seacord told Marvel that he had been ordered not to reinstate him and that Warden Snyder stated, "Marvel don't get no fucking job back, he's got a lawsuit against us!" n9

> n9 This information is asserted in an affidavit attached to Marvel's opposition to the defendants' motion at Exhibit F (D.I. 19).

In his second motion to amend the complaint, Marvel asserts that he was subjected to another cell shakedown that was also retaliatory in nature rather than a random or routine shakedown (D.I. 22). On July 2, 2000, Marvel states that he was standing at the doorway of another inmate's cell assisting him in the writing of a letter to the Records Office. Lt. Burton approached the cell and asked Marvel what he was doing. Marvel explained that he was helping the other inmate write a letter. Lt. Burton reacted [*14] by yelling, "I'm going to put a stop to this shit!, Give me your I.D.! I'm writing your dumb ass up!" Burton then ordered both inmates' cells to be searched and Lt. Burton wrote up Marvel for being "off-limits." The subsequent shakedown of Marvel's cell did not result in any violations of the DCC housing code.

Marvel's motion to supplement the complaint was filed on October 16, 2000 (D.I. 26). He is attempting to add Major David Holman, Captain J. Henry and Lt. Karl Hazzard to this action based on facts which occurred subsequent to his previous filings with the court. According to Marvel, on August 2, 2000, Burton ordered a "cart-type" shakedown of Marvel's cell. n10 Marvel asserts that Lt. Burton indicated that the orders for this procedure came from Warden Snyder, Major Holman, and Captain Henry, the shift commander on that date. The next day, August 3, 2000, Marvel was called away from his law library session and ordered by Lt. Hazzard to "pack your shit because we are moving you to C-Tier." n11 Marvel alleges that Lt. Hazzard indicated that he was acting on orders from Capt. Henry. On September 2, 2000, Marvel questioned Capt. Henry about his transfer and she indicated that she [*15] had been ordered by her direct supervisor, Maj. Holman, who works directly under Warden Snyder. Marvel contends that these additional acts were in response to the filing of his original complaint against the prison. Marvel alleges that the transfer was a retaliatory action because he was not found guilty of any disciplinary infractions that would have justified a transfer to C tier.

> n10 According to Marvel, a "cart-type" shakedown is not a routine or a random shakedown. It involves loading all of a prisoner's possessions into a cart and taking them to another area to be thoroughly examined.
>
> n11 Marvel alleges that he was actually transferred to the C-Tier of the D building which is the most restrictive tier in the D building. It houses inmates who are found guilty of violating institutional rules and is generally a more dangerous and volatile environment.

In addition to the motions discussed above, Marvel has filed additional documents with the court regarding this case. n12 In a letter dated December 15, 2000, Marvel [*16] noted that his legal documents relating to his

Case 1:04-cv-00203-GMS    Document 14-2    Filed 03/02/2006    Page 8 of 12

Page 7
2001 U.S. Dist. LEXIS 10299, *

cases pending in this court were confiscated making it impossible for him to pursue his case (D.I. 30). n13 In a letter dated December 14, 2000, Marvel asserted that he is being held in "behavioral modification segregation" despite his medium security classification. It is not clear to the court whether this is a reference to his previous transfer or indicative of a second transfer. Marvel has also noted that he was attacked by another inmate and suffered serious injuries, including a broken rib, a smashed ear and a torn lip. Marvel has suggested that this attack was instigated by Lt. Hazzard.

> n12 The court will treat these filings and additional requests as motions to amend the complaint.
>
> n13 This letter also alleged that the defendants assaulted Marvel. However, it is not clear to the court whether Marvel is attempting to add assault as an additional claim in this matter. Additionally, the letter did not allege any facts to support an assault claim. Given this lack of clarity, the court will not address the issues in the letter.

[*17]

The defendants offer a slightly different version of events. They contend that Lt. Burton performed the cell shakedown to assure compliance with the DCC housing rules and maintain institutional order. The defendants also assert that because Lt. Burton was not aware of the personal injury lawsuit Marvel had previously filed that the shakedown could not have been retaliatory in nature. The defendants further assert that when the May 31, 1999 shakedown revealed the presence of bleach in Marvel's cell, he admitted that the bleach was his and that he possessed it in violation of the housing rules. The defendants suggest that Marvel was initially removed from his job because he was found in possession of bleach. The defendants further note that an inmate worker can only be terminated through classification or by the warden. The policy regarding inmate termination and suspension is offered by affidavit The affidavit of Warden Snyder states that an inmate worker can be suspended pending a disciplinary hearing from his inmate job by security officers or the work site supervisor for violation of the inmate rules for behavior, attendance issues, poor work quality, theft or refusal to participate [*18] in their individualized treatment program. According to the defendants, Marvel's removal from his job with the environmental crew did not violate any established prison policies. Additionally, the defendants note that less than 500 of the 1700 inmates incarcerated at the DCC are employed, and that Marvel does not have a constitutional right to participate in a work program. The defendants also assert that Marvel has not alleged any facts to support the elements of his various tort claims. The defendant's have also raised the defenses of sovereign and qualified immunity. For these reasons, the defendants moved to dismiss the complaint on November 8, 1999 (D.I. 9).

In addition, the defendants oppose Marvel's motions to amend the complaint on the theory that their position will be substantially prejudiced because the issue has already been fully briefed. The defendants oppose the addition of the three additional defendants because they assert that none of them were involved in the incident alleged in the original complaint.

## IV. DISCUSSION

[HN3] In order to recover against the defendants, Marvel must show that he was deprived of a constitutional right by a person acting under the [*19] color of state law. *See 42 U.S.C. § 1983.* Here, there is no dispute that the defendants were acting under the color of state law because, at the time of the occurrence of the alleged conduct, they were correctional officers at the institution where Marvel was incarcerated. *See Cespedes v. Coughlin, 956 F. Supp. 454, 465 (S.D.N.Y. 1997)* (noting that it was "undisputed that [the] defendants . . . acted pursuant to their authority as prison officials under color of New York state law"); *cf. Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996)* (stating that "the defendants were 'acting under color of state law' in that they were performing the 'traditional state function' of operating a prison."). Thus, the only questions for the court to consider are whether the defendants' search of Marvel's cell, subsequent removal from his job, and transfer to another unit within the facility were retaliatory in nature in violation of any of his constitutional rights. Additionally, the court will address the other alleged constitutional violations as well as the numerous tort claims Marvel has alleged.

A. Marvel's [*20] Motions to Amend and Supplement the Complaint.

*Federal Rule of Civil Procedure 15* governs the filing of supplemental pleadings. The relevant section of the rule reads, "[HN4] the court may permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Fed. R. Civ. P. 15(d).* [HN5] The grant of an application under Rule 15(d) is within the sound discretion of the court. Leave to supplement should be granted if it will promote the just disposition of the case, will not cause undue prejudice or delay, and will not prejudice the rights of any parties. *See The Proctor & Gamble Company v.*

*McNeil-PPC, Inc.* 1998 U.S. Dist. LEXIS 23305, *4, 1998 WL 1745118 (D. Del. 1998) (citing *United States v. Local 560 (I.B.T.),* 694 F. Supp. 1158, 1187 (D.N.J. 1988)). The court has broad discretion in the application of Rule 15(d) and should apply it in a manner designed to secure "the just, speedy and inexpensive determination of every action." *See id.* (citing *Fed. R. Civ. P. 1.*) Therefore, unless the court finds "undue delay, bad faith or dilatory motive on the part of the movant or undue prejudice [*21] to the opposing party an appropriate exercise of a court's discretion should result in affording a plaintiff the opportunity to test its claim on the merits." *See id.* (internal quotations omitted). n14

> n14 [HN6] The standard applicable to motions to amend under *Fed. R. Civ. P. 15(d)* is essentially the same standard that applies to *Fed. R. Civ. P. 15(a). See Epstein v. Township of Whitehall,* 1989 U.S. Dist. LEXIS 7436, Civ. A. No. 88-0534, 1989 WL 73741, at *2 (E.D. Pa. June 29, 1989) (citing *Soler v. G and U, Inc.,* 103 F.R.D. 69 (S.D.N.Y. 1984)).

In this case, Marvel has filed two motions to amend the complaint and one motion to supplement the complaint setting forth additional allegations and seeking appropriate relief for his claims. The first amended complaint, filed November 15, 1999, contains a document relating to a DCC administrative hearing on October 15, 1999. According to Marvel, at the hearing he was found not guilty of violating the DCC housing codes for possessing bleach on May 31, 1999. The [*22] defendants oppose this motion on the grounds that they would be substantially prejudiced were it to be granted. The court does not agree. Finally, this motion for leave to file an amended complaint does not appear be a result of bad faith or dilatory motive. Therefore, the court will grant Marvel's first motion to amend the complaint (D.I. 11).

Marvel's second motion to amend the complaint, filed on July 24, 1999, attempts to add the facts surrounding another shakedown of Marvel's cell as well as the shakedown of another inmate's cell to support his retaliation claim. These events occurred on July 2, 2000, approximately 13 months after the events alleged in the original complaint and 16 months after the original personal injury action upon which the retaliation claim is based was filed. The court questions the sufficiency of the temporal proximity between these events and the original action. Furthermore, it does not appear the two searches are sufficiently factually related to the events alleged in the original complaint. In addition, the defendants have filed an opposition in which they assert that they will be substantially prejudiced if they are required to address these unrelated [*23] issues. For these reasons, the court will deny Marvel's second motion to amend the complaint (D.I. 22).

Marvel also filed a motion to supplement his complaint on October 16, 2000 (D.I. 26). In the motion, Marvel asserts that he was subjected to a "cart-type" shakedown on August 2, 2000 and that no housing infractions were discovered as a result of this event. Once again, it is unclear how this third cell shakedown is related to the events alleged in the original complaint. n15 This motion also attempted to add three additional defendants -- Maj. Holman, Capt. Henry, and Lt. Hazzard. The facts set forth in the supplemental complaint fail to state how these additional defendants are involved in the incidents alleged in the original complaint. However, the supplemental complaint also notes that Marvel was transferred to a high security and disciplinary unit within the facility. Marvel alleges that his transfer is not based on any alleged behavioral infractions. He ultimately concludes that the transfer must be related to his retaliation claim. The court will leave the factual relationship between Marvel's claim of retaliation and his transfer for a jury to decide. Therefore, it will [*24] allow this aspect of the supplemental complaint to be added to the record. For these reasons, Marvel's motion to supplement the complaint will be granted in part and denied in part (D.I. 26).

> n15 In a letter addressed to the court addressed December 15, 2000, Marvel noted that in addition to his transfer to a higher security area within the prison, his legal documents were confiscated. While the confiscation of legal documents is clearly relevant to the case, it is not clear to the court when this event took place, nor has this fact been included in any of Marvel's amended or supplemental complaints.

### B. The Defendants' Immunity Defenses

The court will dismiss Marvel's claims which seek monetary damages against Warden Snyder and Burton for acts performed in their official capacity. n16 [HN7] It is axiomatic that state officials acting in their official capacities are not "persons" for the purposes of *42 U.S.C. § 1983. See Will,* 491 U.S. at 71. Even if the defendants could [*25] be sued under § 1983, [HN8] monetary damage claims against state officials in their official capacity are also barred by the Eleventh Amendment. *See Hafer v. Melo,* 502 U.S. 21, 30, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991). However, Marvel has also named all of the defendants in their individual capacities. Such claims are within the scope of § 1983 and are not barred by the Eleventh Amendment. *See id.* at 30-31. As such, Mar-

vel's claims against the defendants in their individual capacities may proceed. n17

> n16 Marvel has sued Burton and Snyder in both their official and individual capacities. He has sued all other defendants in their individual capacities only. *See* Compl. at P3.
>
> n17 To the extent Marvel seeks injunctive relief against the defendants in their official capacities, *see* Compl. at P 17 (requesting "any other relief" deemed appropriate), those claims may also proceed. *See Will, 491 U.S. at 71 n.10.*

The defendants have also raised a qualified [*26] immunity defense. [HN9] The doctrine of qualified immunity requires an initial determination of whether the statutory or constitutional right violated was "clearly established". Next, the court must consider whether a reasonable person would have been aware of that right. *See Harlow v. Fitzgerald, 457 U.S. 800. 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).* In this case, Marvel clearly has a right to be free from retaliation for exercising his constitutional right to pursue civil redress in a federal court. Additionally, this is a right of which the defendants should have been aware. Therefore, the court will not dismiss the case on the grounds of qualified immunity.

### C. Marvel's Retaliation Claim

In *Rauser v. Horn*, [HN10] the Third Circuit recently defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. *See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001).* The court established a three prong test for determining whether retaliation has occurred. First, the prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. *See id. at 333* [*27] (citing *Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999)* (en banc)); *see also Drexel v. Vaughn, 1998 U.S. Dist. LEXIS 4294, Civ.A.No. 96-3918, 1998 WL 15178,* at *7 (E.D. Pa. Apr. 2, 1998) (determining that prisoner had engaged in constitutionally protected conduct before proceeding with retaliation inquiry). In this case, Marvel has a constitutional right to pursue civil redress in federal court under § 1983. Therefore, Marvel meets the first prong of the *Rauser* test.

[HN11] The second prong of the *Rauser* analysis requires a prisoner litigating a retaliation claim to show that he has suffered some adverse action at the hands of prison officials. *See Rauser, 241 F.3d at 333* (citing *Allah v. Seiverling, 229 F.3d 220, 225 (3d. Cir. 2000)).* A prisoner-plaintiff can satisfy this requirement by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See id.* In this case, Marvel has alleged that he was subject to a strip search, a cell shakedown, removed from his inmate-job and transferred to a higher security and potentially more dangerous area of the prison facility. [*28] The defendants do not dispute these facts, although they suggest different reasons for their occurrence. The court believes that these events could negatively sway a reasonable prisoner from pursuing redress in the court. As a result, the court finds that these allegations (combined with record evidence) are sufficient to survive summary judgement.

Finally, [HN12] the third aspect of the *Rauser* test requires a prisoner-plaintiff to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. In *Mount Healthy Bd. of Ed. v. Doyle,* the Supreme Court used the same burden shifting framework in deciding a retaliation case that arose in the public employment context. *429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).* The Third Circuit has also utilized this framework in the prisoner retaliation context. *See Rauser, 241 F.3d at 333.* Under this regime, the prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id.* (citing *Mount Healthy, 429 U.S. at 287).* The burden [*29] will then shift to the defendant to prove by a preponderance of the evidence that he would have taken the same disciplinary action even in the absence of the protected activity. *See id.* However, this framework must also take the difficult task of prison administration into account. In *Turner v. Safley,* the Supreme Court held that [HN13] a prison regulation that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests." *482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).*

[HN14] Therefore, a prisoner must initially demonstrate that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision. If, however, the prison officials prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See Rauser, 241 F.3d at 334.* In *Rauser,* the Third Circuit considered the temporal proximity between the prisoner-plaintiff's insistence on his constitutional rights and the alleged adverse actions he suffered in considering the causation prong of this analysis. [*30] *See id. at 334.* Following *Rauser,* the court finds the instant record does not support granting the defendants summary judgment on Marvel's retaliation claim.

Case 1:04-cv-00203-GMS    Document 14-2    Filed 03/02/2006    Page 11 of 12

Page 10
2001 U.S. Dist. LEXIS 10299, *

First, Marvel has demonstrated temporally the close proximity between his pursuit of a personal injury action against the DCC and several adverse actions he subsequently suffered. Warden Snyder signed an executed return of service on May 18, 1999 in relation to Marvel's personal injury action filed on March 2, 1999. Three days later, on May 21, 1999, the DCC received a letter from an attorney claiming that he represented Marvel in his personal injury action and requesting copies of all relevant medical documents relating to the injury which gave rise to that suit. On May 31, 1999, only ten days after the letter was received by the prison, Marvel was strip searched and his cell was tossed. In the process of that search Lt. Burton stated, "You like to sue people, do you? . . . Well, sue me! . . . "Got a problem with that? . . . I don't think so."

Second, the defendants have asserted that Marvel was initially removed from his job due to a DCC housing infraction and that he was eventually classified out of the [*31] environmental crew due to his failure to participate in his treatment plan on November 4, 1999. However, Marvel has alleged that he did not receive his job back despite the determination that he had not violated the DCC housing regulations, and because Warden Snyder told Marvel's work supervisor that, "Marvel don't get no fucking job back, he's got a law suit against us." In addition, Marvel was also transferred to a higher disciplinary tier of the prison facility for no apparent reason.

Viewing the evidence in the light most favorable to Marvel (as the court must), a reasonable jury could determine that Marvel's constitutionally protected conduct was a motivating factor for the defendants' actions against him. Therefore, the court will deny the defendants' motion for summary judgment with respect to the retaliation claim Marvel has asserted against Warden Snyder and Lt. Burton.

### D. Marvel's Eighth Amendment and Equal Protection Claims

Marvel has alleged that his Eight Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment equal protection rights have been violated. n18 Marvel has not clearly stated any facts to establish the elements of an [*32] Eight Amendment violation. The court assumes that Marvel is attempting to establish a relationship between the searches of his person and his cell and an alleged Eight Amendment violation. There is no record evidence, however, upon which the court could conclude the search violated the Eighth Amendment. Marvel's allegations regarding his transfer, however, could conceivably support his Eight Amendment claim. Therefore, the court must evaluate whether his claim survives summary judgment. Although Marvel alleged that another prisoner attacked and injured him at the behest of a prison guard, he does not offer a 'scintilla' of evidence to support his claim. Since Marvel must supply factual evidence rather than mere allegations, the court will grant the defendants' summary judgment on the Eighth Amendment claims.

> n18 These additional claims will be considered with respect to the additional facts that have be pled in Marvel's motions to amend and supplement the complaint.

Marvel has also generally asserted a Fourteenth [*33] Amendment equal protection violation claim in his original complaint. Since he does not provide any facts or specific allegations regarding this complaint, the court will also enter summary judgment in favor of the defendants on this issue.

### E. Marvel's Tort Claims

Marvel has also raised several state law tort claims under the Delaware State Tort Claims Act. *See Del. C. ann. tit. 10, § 4001.* He has alleged the torts of battery, negligence, deliberate indifference, conspiracy and intentional infliction of emotional distress. [HN15] The court has supplemental jurisdiction over these state claims if they arise out of the same case or controversy under *28 U.S.C. § 1367*(a). *See United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966).* Marvel has alleged these claims against the defendants in both their individual and official capacity. [HN16] Where the state claims are against the agency or official in their official capacity, however, the Eleventh Amendment bars the exercise of federal jurisdiction and supplemental jurisdiction over the party. *See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 119-23, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984).* [*34] Therefore, the court will dismiss Marvel's state law claims against the defendants in their official capacity. In addition, since Marvel has failed to produce any record evidence to support these claims. Therefore, the court will enter summary judgment in favor of the defendants in their official and individual capacity on Marvel's state claims.

### V. CONCLUSION

For the reasons set forth above, the court will grant Marvel's two motions to amend the complaint. The court will grant Marvel's motion to supplement the complaint in part and deny the motion in part. Specifically, the court will grant the portion of the motion relating to Marvel's transfer and will deny the portion of the motion relating to the third cell shakedown and the attempt to add additional defendants. The court will grant the defendants' motion for summary judgment in part and deny

this motion in part. Specifically, the court will dismiss Marvel's eight amendment claims and his state tort claims. The court will permit the retaliation action against Warden Snyder and Lt. Burton to proceed. n19 The court will issue an order in conjunction with this memorandum opinion.

n19 As noted above, if he is successful at trial, Marvel may only collect monetary damages for actions of the defendants acting in their individual capacities and injunctive relief for actions taken in their official capacities.

[*35]

**ORDER**

For the reasons stated in the court's Memorandum Opinion of the same date, IT IS HEREBY ORDERED that:

1. Marvel's Motions to Amend the Complaint (D.I. 11, 22) are GRANTED.

2. Marvel's Motion to Supplement the Complaint (D.I. 26) is GRANTED in part and DENIED in part.

3. The defendants' motion to dismiss (D.I. 9) is DENIED in part and GRANTED in part.

Dated: July 24, 2001

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE