# EXHIBIT B

LEXSEE 1993 DEL. CH. LEXIS 95

MARTIN BERGER and ELSA B. BERGER, t/a MB HOLDING CO., n/k/a THE BERGER COMPANY, a Delaware Partnership, Plaintiffs, v. COLONIAL PARKING, INC., a Delaware corporation, and CSX TRANSPORTATION INC., a Virginia corporation, successor to interests of THE BALTIMORE AND PHILADELPHIA RAILROAD COMPANY and THE BALTIMORE AND OHIO RAILROAD COMPANY, Defendants.

Civil Action No. 8415

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1993 Del. Ch. LEXIS 95*

May 20, 1993, Submitted
June 9, 1993, Decided

**NOTICE:** THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** [*1]

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT: DENIED. ON CHESSIE SYSTEM RAILROAD'S MOTION FOR SUMMARY JUDGMENT: GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, individuals and partnership, brought an action seeking recognition that they were the owners by way of adverse possession of a strip of land adjacent to their warehouse. Plaintiffs alternatively claimed a prescriptive easement. Defendant railroad was the record owner of the disputed parcel of land and had leased it to defendant parking corporation for use as a parking lot. The parties filed cross-motions for summary judgment.

**OVERVIEW:** The court found that plaintiffs bore the burden of showing that their possession of the disputed property was exclusive. However, the court determined that plaintiffs had not produced any evidence that their possession of the disputed property excluded the use by defendants and the general public. The court held that because plaintiffs had not met their burden, summary judgment for the railroad was appropriate regarding plaintiffs' claim to title by adverse possession. Plaintiffs also asserted a right to a prescriptive easement across the disputed land. The court found that the tenants' use of the disputed property could not be imputed to plaintiffs' predecessors in title and plaintiffs' own use of the disputed property was insufficient to satisfy the prescriptive period. Therefore, the court concluded that the railroad was entitled to summary judgment and dismissed plaintiffs' claim to an easement by prescription.

**OUTCOME:** The court denied plaintiffs' motion for partial summary judgment and granted defendants' motion for summary judgment, dismissing the suit.

**CORE TERMS:** railroad, warehouse, tenant, disputed property, prescriptive easement, easement, lease, hostile, landlord, truck, claimant, summary judgment, predecessors, adverse use, adverse possession, prescriptive period, claim of right, owner-landlord, loading dock, negotiations, imputed, material issue of fact, continuous, strip of land, team track, side track, prescription, disputed, privity, leased

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment may be entered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment may be entered against a party who, after sufficient time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Real & Personal Property Law > Adverse Possession*
[HN2] In order to establish title by adverse possession, a plaintiff must show by a preponderance of the evidence that his possession of the property at issue was open, continuous, notorious, hostile, and exclusive for a twenty-year period. Possession is exclusive when the claimant's possession excludes the record owner and the public.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN3] Claims of prescriptive rights are disfavored because they necessarily work forfeitures of existing property rights. Accordingly, in order to establish a prescriptive easement, the party asserting the easement must establish each of the elements required by clear and convincing proof. The elements necessary to establish a prescriptive easement are a continuous, uninterrupted and adverse use by the party claiming the easement or those in privity with him, for a period of more than 20 years. The use must also be made under a claim of right.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN4] Continuous use does not mean constant use but simply the exercise of the claimed right more or less frequently according to the nature of the use.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN5] Only a substantial interference with the use can defeat a prescriptive easement.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN6] The terms "adverse use" and "hostile use" are used interchangeably. A use is adverse or hostile if it is inconsistent with the rights of the owner. The use must not be subordinate or subservient to the owner's rights.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN7] It has been held that an offer made by one claiming a prescriptive easement to purchase the land over which the easement is claimed is not inconsistent with a claim of a prescriptive easement. A prescriptive easement only entitles the holder of the easement to the right to use the property over which the easement is claimed while a purchase would afford the claimant the full spectrum of rights associated with ownership of the property. However, an acknowledgment within the prescriptive period of a superior right of the record owner by the person claiming a prescriptive easement may prevent the use from being deemed hostile. At least one court has held that where, during or after the time of claimed adverse use, the party claiming a prescriptive easement negotiated for the right to use the property, his claim to a prescriptive easement would fail.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN8] The Delaware Court of Chancery has held that when a person has used another's property adversely, but subsequently enters into a lease for the use of that property, his successor in title may still assert an easement by prescription based upon the prior adverse use.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN9] While the actual entry into a lease may be conclusive evidence that the claimant's use during the pendency of the lease is permissive, and therefore not hostile, the fact that the claimant entered into lease negotiations is not necessarily a concession that the prior use was not hostile and not made under a claim of right.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN10] In order to make up the prescriptive period, successive adverse users by different persons may be tacked, but there must be privity between such persons. This privity may be based upon contract, estate, or blood relationship.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN11] It has been observed that for a tenant's possession of lands to be imputed to his landlord: Generally where a landlord claims under a statute of limitation by virtue of possession of his tenant, he is deemed to have possession of only such land as between him and the tenant the latter had in lawful possession under the lease. Thus, the possession by a tenant of land which is outside of the boundaries leased and which the landlord never had in possession and to which he had never claimed title, is not possession by the landlord, even though the tenant believed the land to be described in the lease. In such case there is no privity of estate between the landlord and the tenant as to such land. Where, however, it

appears that both parties understood that the right to occupy certain premises passed under the lease, the tenant's occupancy will be treated as that of the landlord even though the premises were not covered in the legal description of the lease.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN12] The use by a tenant can be employed in finding the requisite prescriptive period only when such use can be said to have been expressly or impliedly, from the circumstances, embraced within the terms of the tenancy itself. Otherwise, it would merely be a continuing trespass by the tenant, the benefit of which the landlord could not claim.

*Real & Personal Property Law > Estates, Rights & Titles > Easements & Rights of Way*
[HN13] Without the owner-landlord's use of, or claim to, an easement, there can be no privity of estate between the owner-landlord and its tenant as to the easement and the tenant's use cannot be imputed to the owner-landlord even if the tenant believed that the easement was covered by the lease.

**COUNSEL:**

Richard K. Herrmann, Esquire, and Mary B. Matterer, Esquire, BAYARD, HANDELMAN & MURDOCH, P.A., Wilmington, DE 19899, Attorneys for Plaintiffs.

Richard J. Abrams, Esquire, RICHARDS, LAYTON & FINGER, Wilmington, DE 19899-0551, Attorney for Defendant Colonial Parking, Inc.

George H. Seitz, III, Esquire, Wendie C. Stabler, Esquire, and Patricia A. Pyles, Esquire, PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE, Wilmington, DE 19899-1328, Attorneys for Defendant CSX Transportation Inc.

**JUDGES:** HARTNETT

**OPINIONBY:** HARTNETT

**OPINION:**

MEMORANDUM OPINION

HARTNETT, Vice Chancellor

Plaintiffs Martin Berger, Elsa B. Berger, and The Berger Company, a Delaware partnership (collectively, "the Bergers"), brought this action seeking recognition that they are the owners by way of adverse possession of a strip of land adjacent to their warehouse in Wilmington. Defendant CSX Transportation Inc. ("the Railroad") is the record owner of the disputed parcel of land and has leased it to defendant Colonial Parking, Inc., for use as a parking lot. In the alternative, the Bergers seek recognition that they are entitled [*2] to a prescriptive easement over the disputed parcel.

The Bergers have moved for summary judgment on their claim of a prescriptive easement. The Railroad has cross-moved for summary judgment dismissing both the Berger claims.

The Railroad's motion for summary judgment dismissing the adverse possession claim must be granted because the Bergers have adduced no evidence that they were ever in exclusive possession of the disputed parcel of land. The Bergers' motion for summary judgment on their claim to a prescriptive easement must be denied, and the Railroad's cross-motion for summary judgment granted, because the Undisputed record shows that the Bergers cannot show that they, or those in privity with them, have used the disputed property for the requisite twenty-year period.

It is not asserted in this litigation that any easement by necessity is claimed.

I

The Bergers own and operate a warehouse in Wilmington, Delaware. The land on which the warehouse is erected is bound by the Christiana River on the south, Orange Street on the west and Water Street on the north. The land adjacent to the east, to which the Railroad has record title, is in dispute in this litigation. The eastern [*3] side of the warehouse contains a large loading dock and four loading doors. Adjacent to the east side of the Berger warehouse is a strip of land fifteen feet wide which is part of the parcel owned by the Bergers. At one time this strip contained a "side track" that was used to bring railroad cars to the warehouse.

To the east of the Bergers' property lies the land owned by the Railroad. The Railroad's land is bounded on the south by the Christiana River, on the west by the Bergers' property and on the north by Water Street. Until 1988, the Railroad maintained a "team track," a self-service, public rail facility on the disputed property. Shippers could bring their goods in by railcar on the team track and then unload their goods from the railcars onto their trucks without assistance from Railroad employees.

From 1919 to 1964, the property now owned by the Bergers was owned by Amalgamated Leather Companies, Inc. During much of this period, the loading dock

on the east side of the warehouse was serviced by a "side track."

As time passed, rail transportation was eclipsed by truck transportation and the side track was no longer used. Instead, trucks would be driven across the [*4] team track on the Railroad's property and would back into the loading dock, using the 15-foot wide strip of land owned by the owners of the warehouse on which there was a side track.

The Bergers claim the use of the Railroad's property by trucks servicing the warehouse since the late 1940s. Robert Paris, a former employee of Butler's Stationery and the Coca-Cola Company--both of which were tenants in the warehouse during the 1940s and 1950s--testified at his deposition that during this period he would cross the Railroad's property to reach the loading dock when he was picking up supplies at the warehouse. He indicated that he would do this "a couple of times a week" on occasion although at other times it would be months between trips.

Harry Kline testified at his deposition that his trucking business was a tenant in the warehouse from 1946 through 1950 and that his trucks crossed the Railroad's property to reach the warehouse. Kline also testified that although his trucking firm was not a tenant in the warehouse after 1950, his trucks continued at least weekly to deliver to furniture supply businesses that were tenants in the warehouse until sometime in the 1970s. After the [*5] Bergers acquired the warehouse in 1976, Kline's trucking firm continued to make deliveries to the warehouse. Throughout both periods, Kline's trucks would cross the Railroad's property and back into the loading dock.

In 1964, the property now owned by the Bergers was acquired from Amalgamated Leather by Freda and Lee Kleinbard who leased out portions of the warehouse. In 1976, the Bergers acquired the warehouse from the Kleinbards' estate.

In 1980, a representative of the railroad insisted that the Bergers either stop using the disputed property or pay rent for the use of it. The Bergers and the Railroad entered into negotiations in which the Bergers initially offered to lease the disputed property. Subsequently, the Bergers offered to buy the disputed property. However, the negotiations never resulted in an agreement. In 1986, the Bergers brought this action asserting title by reason of adverse possession or, in the alternative, an easement by prescription, over the Railroad's fifty-foot wide parcel of land adjoining the Berger property and a thirty-foot wide strip of land that leads from the 50-foot wide parcel to Shipley Street.

II

[HN1] Summary judgment may be entered where [*6] there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Benge v. Davis*, Del. Supr., 553 A.2d 1180, 1182 (1989); *Kaufman v. McCabe*, Del. Supr., 603 A.2d 831, (1992). Summary judgment may be entered against a party who, after sufficient time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Burkhart v. Davies*, Del. Supr., 602 A.2d 56, 59 (1991).

III

[HN2] In order to establish title by adverse possession, a plaintiff must show by a preponderance of the evidence that his possession of the property at issue was open, continuous, notorious, hostile, and exclusive for a twenty-year period. *10 Del. C. § 7901*; *Steller v. David*, Del. Super., 257 A.2d 391, 394 (1969), rev'd on other grounds, Del. Supr., 269 A.2d 203 (1970). Possession is exclusive when the claimant's possession excludes the record owner and the public. *Stellar*, 257 A.2d at 395 (1969). [*7]

The Bergers, who bear the burden of showing at trial that their possession of the disputed property was exclusive, after nearly five years of discovery, have not produced any evidence that their possession of the disputed property excluded the use by the Railroad and the general public. Indeed, the record undisputedly shows that the Railroad operated a team track for the use of the general public on the disputed property through 1988.

Because the Bergers have not met their burden of producing any evidence to show that their possession of the disputed property was exclusive, summary judgment must be granted to the Railroad dismissing the Bergers' claim to title by adverse possession.

IV

The Bergers also assert a right to a prescriptive easement across the disputed land. [HN3] Claims of prescriptive rights are disfavored because they necessarily work forfeitures of existing property rights. *Hardesty v. Baynum Enterprises, Inc.*, 1993 Del. Ch. LEXIS 65, *10, Del. Ch., C.A. No. 1487-S, Hartnett, V.C. (Apr. 19, 1993), citing 25 AM.JUR.2d Easements and Licenses § 39. Accordingly, in order to establish a prescriptive easement, the party asserting the easement must establish each of the elements [*8] required by clear and convincing proof. *Lickle v. Frank W. Diver, Inc.*, Del. Supr., 43 Del. Ch. 478, 238 A.2d 326, 329 (1968).

The elements necessary to establish a prescriptive easement are a continuous, uninterrupted and adverse use by the party claiming the easement or those in privity with him, for a period of more than 20 years. Id. The use

must also be made under a claim of right. *West v. Harsanyi*, Del. Ch., 43 Del. Ch. 121, 219 A.2d 260, 261 (1966). All of those elements are in dispute in this litigation and will be discussed seriatim.

V

[HN4] Continuous use does not mean constant use but simply the exercise of the claimed right more or less frequently according to the nature of the use. *25 AM.JUR.2d Easements and Licenses § 56*. There is a material issue of fact here as to whether the use by the Bergers and their predecessors was continuous. Kline testified that his trucks made deliveries to the warehouse "at least weekly" from 1945 to the present. However, John J. Ferry, a Railroad employee who worked in a nearby building testified that, in the period before the Bergers acquired the warehouse, "for a long time" the warehouse looked [*9] "almost unused" and "vacant."

There is also a dispute as to whether the use of the disputed property was uninterrupted. [HN5] Only a substantial interference with the use can defeat a prescriptive easement. *Lickle*, 238 A.2d at 326. Kline testified that his employees had invariably been able to make their deliveries to the warehouse using the claimed easement. However, Ferry testified that "once a month at least," truck shipments to the warehouse would be interrupted by the Railroad's placing of railcars on the team tracks. Therefore, there is a material issue of fact as to whether the use was uninterrupted.

VI

[HN6] The terms "adverse use" and "hostile use" are used interchangeably. *25 AM.JUR.2d Easements and Licenses § 51*. A use is adverse or hostile if it is inconsistent with the rights of the owner. The use must not be subordinate or subservient to the owner's rights. *Marvel v. Barley Mill Road Homes, Inc.*, Del. Ch., 34 Del. Ch. 417, 104 A.2d 908, 911 (1954). The Railroad argues that the Bergers' use was not hostile because the Bergers acknowledged the Railroad's superior right to the disputed property when they entered into sale [*10] and lease negotiations with the Railroad during 1980.

[HN7] It has been held that an offer made by one claiming a prescriptive easement to purchase the land over which the easement is claimed is not inconsistent with a claim of a prescriptive easement. *Zollinger v. Frank*, 110 Utah 514, 175 P.2d 714, 717 (Utah 1946). A prescriptive easement only entitles the holder of the easement to the right to use the property over which the easement is claimed while a purchase would afford the claimant the full spectrum of rights associated with ownership of the property.

However, an acknowledgment within the prescriptive period of a superior right of the record owner by the person claiming a prescriptive easement may prevent the use from being deemed hostile. *25 AM.JUR.2d Easements and Licenses § 51*. At least one court has held that where, during or after the time of claimed adverse use, the party claiming a prescriptive easement negotiated for the right to use the property, his claim to a prescriptive easement would fail. *Hopkins v. Parker*, 296 Mich. 375, 296 N.W. 294, 296 (Mich. 1941); see also *People's Realty & Development Corp. v. Sullivan*, 336 So. 2d 1304, 1305 (Miss. 1976) [*11] (evidence of hostility presented at trial insufficient to support judgment of adverse possession when claimant had twice offered to buy property).

[HN8] The Delaware Court of Chancery, however, has held that when a person has used another's property adversely, but subsequently enters into a lease for the use of that property, his successor in title may still assert an easement by prescription based upon the prior adverse use. *Brosius-Eliason Co. v. DiMondi*, 1991 Del. Ch. LEXIS 193, Del. Ch., C.A. No. 11,338-NC, Berger, V.C. (Nov. 15, 1991).

Brosius-Eliason seems to hold that [HN9] while the actual entry into a lease may be conclusive evidence that the claimant's use during the pendency of the lease is permissive (and therefore not hostile), the fact that the claimant entered into lease negotiations is not necessarily a concession that the prior use was not hostile and not made under a claim of right.

The Texas Supreme Court, in *Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589 (Tex. 1975), reversed the lower court's grant of summary judgment in favor of a claimant on the basis that the claimant's prior offers to buy the property at issue created a material [*12] issue of fact as to whether its possession had been hostile.

It appears therefore that the Bergers' efforts to obtain a lease for the use of the disputed property constitutes some evidence that the Bergers' use was not hostile. The Bergers may thereby have conceded that they had no claim of right. However, there is also evidence in the record to support the Bergers' contention, made at oral argument, that the offers were made merely to avoid litigation and that the Bergers continued during the negotiations to use the disputed property in a hostile manner and under a claim of right. Therefore, there is material issue of fact as to this issue.

VII

It is undisputed, however, that the Bergers have owned the warehouse property for less than the full twenty-year period necessary to establish a prescriptive easement. [HN10] "In order to make up the prescriptive period, successive adverse users by different persons

may be tacked, but there must be privity between such persons." *Marta v. Trincia, Del. Ch., 26 Del. Ch. 94, 22 A.2d 519, 521 (1941)*. This privity may be based upon contract, estate or blood relationship. 4 TIFFANY The [*13] Law of Real Property § 1146, p. 776 (3d ed. 1975).

There is no evidence here, however, that Amalgamated Leather or the Kleinbards--the Bergers' predecessors in title--ever made any adverse use of the disputed property. Therefore, the prescriptive period can only be satisfied if adverse use by the tenants of the Bergers' predecessors in title can be imputed to the Bergers' predecessors.

[HN11] It has been observed that for a tenant's possession of lands to be imputed to his landlord:

> Generally where a landlord claims under a statute of limitation by virtue of possession of his tenant, he is deemed to have possession of only such land as between him and the tenant the latter had in lawful possession under the lease. Thus, the possession by a tenant of land which is outside of the boundaries leased and which the landlord never had in possession and to which he had never claimed title, is not possession by the landlord, even though the tenant believed the land to be described in the lease. In such case there is no privity of estate between the landlord and the tenant as to such land. Where, however, it appears that both parties understood that the right to occupy certain premises [*14] passed under the lease, the tenant's occupancy will be treated as that of the landlord even though the premises were not covered in the legal description of the lease.

Id. at § 1146, p. 778.

This Court has applied this standard (in the context of a claim for an easement by prescription) in determining whether a tenant's use of land outside the boundaries of the landlord's land could be imputed to the landlord:

> [HN12] The use by a tenant can be employed in finding the requisite prescriptive period only when such use can be said to have been expressly or impliedly (from the circumstances) embraced within the terms of the tenancy itself. Otherwise, it would merely be a continuing trespass by the tenant, the benefit of which the landlord could not claim.

*Toto v. Gravino, Del. Ch., 37 Del. Ch. 431, 144 A.2d 237, 239 (1958)*.

In Toto, this Court did find that use of the alley over which a prescriptive easement was claimed was an implied term of the lease based on the physical appearance of the property and a long established pattern of use. Id. The Bergers claim that the physical appearance of the warehouse and the evidence of continued use compel the [*15] conclusion that use of the claimed prescriptive easement over the Railroad's property was an implied term of the various tenants' leases with the Bergers' predecessors in title.

There is, however, a fundamental difference between the facts in this litigation and the facts in Toto. In Toto, this court made a specific finding that the Cambis (the owner-landlords who were predecessors in title to the claimants) had themselves occupied the premises and had themselves used the claimed easement adversely and under a claim of right. *Toto, 144 A.2d at 239*. The court also found that when the Cambis leased the property to others:

> The reasonable inference is that the Cambis believed that the various leases covered the right of such tenants to use the alley; the tenants also so believed and acted upon that belief; when the plaintiffs purchased the property in 1943, they believed they had the right to use the alley, a belief which they entertained during the period from 1939 to 1943 when they were only tenants.

Id.

In the present litigation, however, there is no evidence that the owner-landlords--Amalgamated Leather and the Kleinbards--ever [*16] used the disputed property or ever claimed any easement over it. [HN13] Without the owner-landlord's use of, or claim to, an easement, there can be no privity of estate between the owner-landlord and its tenant as to the easement and the tenant's use cannot be imputed to the owner-landlord even if the tenant believed that the easement was covered by the lease. See 4 TIFFANY The Law of Real Property § 1146, p. 778 (3d ed. 1975). Therefore, because the

tenants' use of the disputed property cannot be imputed to the Bergers' predecessors in title and the Bergers' own use of the disputed property is insufficient to satisfy the prescriptive period, the Railroad is entitled to summary judgment dismissing the Bergers claim to an easement by prescription.

VIII

The Bergers' motion for partial summary judgment is therefore denied and the Railroad's cross-motion for summary judgment dismissing this suit is granted.

IT IS SO ORDERED.