UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAULINE CIABATTONI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-203 (GMS) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THE UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

COLM F. CONNOLLY
United States Attorney, District of Delaware

By:     Rudolph Contreras
        Seth M. Beausang (De. I.D. No. 4071)
        Assistant United States Attorneys
        The Nemours Building
        1007 Orange Street, Suite 700
        P.O. Box 2046
        Wilmington, DE 19899-2046
        (302) 573-6277

Dated: March 9, 2006.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE
       TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. . . . . . . . . . . . . 2

       A.     Standard Of Review Of A Motion To Dismiss.. . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.     Plaintiff Has Failed To State A Claim For An Easement By Prescription . . . . . . 2

              1.     Plaintiff Failed To Allege That She "Openly"
                     and "Notoriously" Used The Conservancy Land
                     For More Than Twenty Years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

              2.     Plaintiff Also Failed To Allege That She Or
                     Her Family Used The Conservancy Land In Such
                     A Way So As To Justify The Broad Prescriptive
                     Easement She Seeks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              3.     Plaintiff Also Failed To Allege That She "Adversly"
                     Used The Conservancy Land For More Than Twenty Years . . . . . . . . . . 7

       C.     Plaintiff Has Failed To State A Claim For An Easement
              By Necessity Because She Admits She Has No Idea When
              Or How Her Property Became Landlocked . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    IN THE ALTERNATIVE, THE UNITED STATES IS ENTITLED
       TO SUMMARY JUDGEMENT ON PLAINTIFF'S CLAIM FOR A
       PRESCRIPTIVE EASEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.     Standard Of Review And Procedural Requirements Of Rule 56 . . . . . . . . . . . . 12

       B.     Summary Judgment Should Be Granted In Favor Of The
              United States On Plaintiff's Claim For A Prescriptive Easement . . . . . . . . . . . 13

       C.     Plaintiff's Requests For Discovery Violate Rule 56(f) And
              Should Be Rejected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**CASES**                                                                                                 **PAGE**

*Anolick v. Holy Trinity Greek Orthodox Church*,
 787 A.2d 732 (Del. Ch. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4, 8

*Bailey v. U. S. Postal Serv.*,
 208 F.3d 652 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Carter v. De. State Univ.*,
 C.A. No. 99-642 GMS, 2002 WL 335309 (D. Del. Feb. 27, 2002) . . . . . . . . . . . . . . . . 15

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*D'Amico v. City of New York*,
 132 F.3d 145 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dowling v. City of Phila.*,
 855 F.2d 136 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hahn v. Atlantic Richfield Co.*,
 625 F.2d 1095 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hughes v. Abbott*,
 86 A.2d 358 (Del. Ch. 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Tower Air, Inc.*,
 416 F.3d 229 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Johnson v. Bell*,
 C.A. No. 1540-K, 2003 WL 23021932 (Del. Ch. Dec. 11, 2003) . . . . . . . . . . . . . . . 4, 8-9

*Jost v. Resta*,
 536 A.2d 1113 (Me. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Leichtfuss v. Dabney*,
 122 P.3d 1220 (Mont. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lynch v. Glass*,
 119 Cal. Rptr. 139 (Cal. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

i

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pencader Assocs., Inc. V. Glasgow Trust*,
    446 A.2d 1097 (Del. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 12

*Radich v. Goode*,
    886 F.2d 1391 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ranke v. Sanofi-Synthelabo Inc.*,
    436 F.3d 197 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Romans v. Nadler*,
    14 N.W.2d 482 (Minn. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schmid v. McDowell*,
    649 P.2d 431 (Mont. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Thompson v. Schuh*,
    593 P.2d 1138 (Or. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

Am. Jur. 2d Easements and Licenses (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Restatement (Third) of Property, Servitudes (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

Plaintiff,[1] the owner of some land along the Delaware Bay (the "Property"), filed this action on August 19, 2003 in the Delaware Court of Chancery against the Nature Conservancy, which owned land (the "Conservancy Land") directly south of Plaintiff's Property. Plaintiff claims that her Property is landlocked and seeks an easement by prescription or an easement by necessity that would enable her to, among other things, build a road and utility lines across the Conservancy Land. (Compl. ¶ 29.)

After this action was filed, the United States purchased the Conservancy Land, substituted itself as the Defendant, and removed this action to this Court. On May 13, 2004, the United States filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment, and a brief in support thereof (the "Motion"). After a brief stay of this action, Plaintiff filed a brief in opposition to the United States' Motion on March 2, 2005.

The United States' Motion pointed out numerous pleading defects in Plaintiff's Complaint. Also, the United States attached to its Motion two letters that showed that Plaintiff could not prove her claim for an easement by prescription. In response, Plaintiff did not move to amend her complaint so she could attempt to fix her pleading defects. Nor did she submit any affidavits or point to any facts showing that there is a genuine issue for trial as Fed. R. Civ. P. 56(e) required her to do. This is the United States' Reply Brief in support of its Motion. As explained below, Plaintiff's Complaint should be dismissed.

---

[1] The United States understands the Plaintiff passed away shortly after this case was filed and that Plaintiff's counsel intends to add Plaintiff's estate or her heirs as a plaintiff in this action. (*See* Pl.'s Br. at 1 n.1.) The United States respectfully requests that any dismissal of this action be entered against Plaintiff, her estate and her heirs.

**ARGUMENT**

**I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

    **A.    Standard Of Review Of A Motion To Dismiss.**

Plaintiff acknowledges that, on a motion to dismiss, the Court should only accept as true the allegations in the Complaint and all reasonable inferences that can be drawn therefrom.  (Pl.'s Br. at 9 (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).)  Thus, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  *Morse*, 132 F.3d at 906.  The Court of Appeals for the Third Circuit recently held that "[e]ven at the pleading stage, a defendant deserves fair notice of the general factual background for the plaintiff's claims."  *In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005).  While Plaintiff's Complaint need not allege "detailed facts," it still must provide *some* "supporting facts" to survive a motion to dismiss.  *Id.*  As explained below, Plaintiff has failed to allege *any* facts to support her claims for an easement by prescription or an easement by necessity.  Accordingly, the Complaint should be dismissed.

    **B.    Plaintiff Has Failed To State A Claim For An Easement By Prescription.**

        **1.    Plaintiff Failed To Allege That She "Openly" and "Notoriously" Used The Conservancy Land For More Than Twenty Years.**

As explained in the United States' Opening Brief, to establish an entitlement to a prescriptive easement, the Plaintiff must establish by clear and convincing evidence that, among other things, "she, or a person in privity with her, used the disputed property [for more than twenty years] . . . openly [and] . . . notoriously."  (*See* Def.'s Op. Br. at 5-6); *see also Anolick v. Holy Trinity Greek Orthodox Church*, 787 A.2d 732, 740 (Del. Ch. 2001).  "To be open and

2

notorious, the use 'must be so open, visible, and apparent that it gives the owner of the servient tenement knowledge and full opportunity to assert his rights.'" *Anolick*, 787 A.2d at 741 (quoting 25 AM. JUR. 2d EASEMENTS AND LICENSES § 60 (1996)). "Sporadic and casual uses are generally not open or notorious." *Id.* (quotations omitted); *see also Hughes v. Abbott*, 86 A.2d 358, 359 (Del. Ch. 1952) (holding that the property must be used "at such frequent intervals as to give notice to the owner of servient tenement that such a[n easement] right was being claimed").

Here, Plaintiff's Complaint does not allege a *single fact* to support the bald legal conclusion that she and her family used the Conservancy Land in an open and notorious manner. The *only* allegation that attempts to speak to this issue is found in Paragraph 10 of the Complaint, which states, in full: "Since Plaintiff's husband first took title to the Property in 1969, Plaintiff and Plaintiff's family have gained access to the Property by crossing the Conservancy Land to reach Bayshore Drive." (Compl. ¶ 10.)[2] Omitted from the Complaint, however, is any indication as to the number of times since 1969 that Plaintiff and her family actually crossed the Conservancy Land to reach the Property. Did they cross the Conservancy Land *once* over that time? Once a year? More often? The United States – and the Court – are forced to guess.

Plaintiff claims that "for some time" she and her family have sought to "improve the Property by constructing a dwelling on the Property," but that they have been unable to do so. (Compl. ¶¶ 11-12.) Accordingly, the *best* reasonable inference that can be drawn in Plaintiff's favor is that – given that the Property is unimproved and contains not even a dwelling – Plaintiff

---

[2]The United States notes that this allegation makes no sense as written – Plaintiff could only access the Property via the Conservancy Land if she crossed the Conservancy Land *from* Bayshore Drive. By "crossing the Conservancy Land to reach Bayshore Drive" (Compl. ¶ 10), she would be *leaving* the Property.

and her family may have occasionally crossed the Conservancy Land to inspect the Property in connection with their improvement plans.  Even if that were so, however, it still would not be enough to show that Plaintiff and her family used the Conservancy Land in a manner so open and notorious that Plaintiff should be granted a prescriptive easement.  *See, e.g.*, *Thompson v. Schuh*, 593 P.2d 1138, 1141-42 (Or. 1979) (holding that plaintiff's testimony that he crossed the defendant's land "several times a year" to inspect his property was not enough to demonstrate an entitlement to a prescriptive easement); *see also Anolick*, 787 A.2d at 741 (holding that "plaintiffs' claims that they use the alley for strolls or visits to neighbors" only constituted "[s]poradic and casual uses" that were not enough for a prescriptive easement); *Lynch v. Glass*, 119 Cal. Rptr. 139, 144 (Cal. Ct. App. 1975) (holding that evidence that plaintiff used a road to cross defendants' property "some 20 to 25 times per year" was not enough to demonstrate an entitlement to a prescriptive easement); *Romans v. Nadler*, 14 N.W.2d 482, 485 (Minn. 1944) (holding that evidence that plaintiff used the defendant's property twice a year was not enough to establish a prescriptive easement; "Occasional and sporadic trespasses for temporary purposes, because they do not indicate permanent occupation and appropriation of land, do not satisfy the requirements of hostility and continuity, and do not constitute adverse possession, even where they continue throughout the statutory period."); *Johnson v. Bell*, C.A. No. 1540-K, 2003 WL 23021932, at *2 (Del. Ch. Dec. 11, 2003) (stating that prescriptive easements are "generally disfavored because they necessarily work forfeitures of existing property rights").

Accordingly, because Plaintiff has failed to allege any facts to show that she or her family used the Conservancy Land in a manner that was more than sporadic and casual – and because no such reasonable inference can be found in the Complaint – Plaintiff's claim for a prescriptive

4

easement should be dismissed.

Another reasonable inference from the allegations in the Complaint – and perhaps the only reasonable inference – is that Plaintiff and her family *never* crossed the Conservancy Land to reach the Property between 1969 and 1989. If Plaintiff and her family had actually crossed the Conservancy Land during that time, then surely she would not need to allege, *upon information and belief*, that a "private road of some sort" ran across the Conservancy Land and provided access to the Property (Compl. ¶ 15) – she would know whether or not such a road existed and what sort of road it was. If Plaintiff and her family never crossed the Conservancy Land between 1969 and 1989 – as the Complaint indicates – then obviously Plaintiff is not entitled to a prescriptive easement across the Conservancy Land.

Plaintiff states, *in her Brief*, that "she and her family traveled over the Conservancy Land to access the Property on a regular basis since 1969 . . . ." (Pl.'s Br. at 10.) As noted above, however, *the Complaint* fails to allege that Plaintiff and her family crossed the Conservancy Land to reach the Property on a regular basis. Plaintiff obviously knows how often she and her family crossed the Conservancy Land to reach the Property – for whatever reason, she elected not to say so in her Complaint. Plaintiff also elected – for whatever reason – not to move to amend her Complaint when this pleading defect was pointed out to her by the United States in its Opening Brief. Accordingly, the Court should reject Plaintiff's belated attempt to amend her Complaint with her Answering Brief, especially given that Plaintiff has not filed a formal motion to amend. "If [Plaintiff] had been in possession of facts that would have augmented [her] complaint and possibly avoided dismissal, [she] should have pled those facts in the first instance." *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006) (finding that district court did not abuse

its discretion in dismissing plaintiffs' complaint and denying them leave to amend because they asked for leave to amend in their brief and did not file a formal motion to amend).

At most, the Complaint alleges that, *since 1999*, "[f]rom time to time . . . Plaintiff's family has nevertheless continued to cross the Conservancy Land to reach the Property." (Compl. ¶¶ 12, 14.) That allegation is insufficient for two reasons. First, the allegation that Plaintiff crossed the Conservancy Land "[f]rom time to time" does no more than allege that Plaintiff crossed the Conservancy Land in a sporadic and casual manner, which does not suffice to show a prescriptive easement. Moreover, Plaintiff only alleges that she and her family crossed the Conservancy Land "[f]rom time to time" *since 1999*, (*see* Compl. ¶¶ 12, 14.), i.e., not for the twenty-year period needed for a prescriptive easement. For all these reasons, then, Plaintiff's claim for a prescriptive easement should be dismissed.

> **2.      Plaintiff Also Failed To Allege That She Or Her Family Used The Conservancy Land In Such A Way So As To Justify The Broad Prescriptive Easement She Seeks.**

As pointed out in the United States' Opening Brief (Def.'s Op. Br. at 4 n.3), even if Plaintiff were granted a prescriptive easement over the Conservancy Land – which should not happen – the easement would only give her and her family the right to cross the Conservancy Land in the same manner in which they have purportedly done since 1969. *See, e.g.*, *Leichtfuss v. Dabney*, 122 P.3d 1220, 1227 (Mont. 2005) ("Furthermore, the scope of an easement gained by prescription is constrained by – i.e., may not exceed – the character and extent of the use made of it during the prescriptive period."); *see also* RESTATEMENT (THIRD) OF PROPERTY, SERVITUDES § 4.10 illus. 15, at 599-600 (2000) (same).

Here, Plaintiff seeks an easement that would allow her to build a roadway "sufficient to

allow routine vehicular access (as well as construction vehicles during construction), and underground . . . utilities lines for electric and phone." (Compl. ¶ 29.) However, Plaintiff admits that she and her family *never used the Conservancy Land in that manner*. According to the Complaint, Plaintiff asked the former owners of the Conservancy Land if she could build a road and run utility lines across the property, *but they refused*. (*See id.* ¶ 12.) Thus, even if Plaintiff's occasional crossing of the Conservancy Land could give rise to some limited prescriptive easement, that easement would not be as broad as the easement she seeks – i.e., it would not allow her to build a road or run utility lines across the Conservancy Land. *See, e.g.*, *Jost v. Resta*, 536 A.2d 1113, 1115 & n.2 (Me. 1988) (holding that a prescriptive easement established for vehicular access does not include the right to install utility lines). Accordingly, Plaintiff's Complaint – which seeks a broad proscriptive easement to which Plaintiff is not entitled – should be dismissed.[3]

### 3. Plaintiff Also Failed To Allege That She "Adversly" Used The Conservancy Land For More Than Twenty Years.

As explained in the United States' Opening Brief, to establish an entitlement to a prescriptive easement, the Plaintiff must also establish by clear and convincing evidence that, among other things, "she, or a person in privity with her, used the disputed property [for more than twenty years] . . . adversely to the rights of others . . . ." (*See* Def.'s Op. Br. at 5-6); *see also*

---

[3]Also, as pointed out in the United States' Opening Brief, the easement that Plaintiff seeks must be the same path that Plaintiff purportedly followed during the prescriptive period. (Def.'s Op. Br. at 6-8.) Plaintiff admits that the road that she and her family purportedly used to cross the Conservancy Land no longer exists. (Compl. ¶ 15.) Accordingly, Plaintiff's claim should be dismissed because the easement she seeks – i.e., a *new* road and utility lines across the Conservancy Land (*id.* ¶ 12) – is different from and broader than the path she and her family allegedly used to cross the Conservancy Land.

*Anolick*, 787 A.2d at 740.  A plaintiff who uses the defendant's property with the defendant's permission does not use the property "adversely to the rights of others."  *See, e.g.*, *Johnson*, 2003 WL 23021932, at *3.

In her Answering Brief, Plaintiff contends that she has met her burden of alleging that she used the Conservancy Land adversely to the rights of its owners because a road was allegedly visible running across the Conservancy Land.  (Pl.'s Br. at 11.)  "Indeed," Plaintiff asks, "what could be more obvious than a roadbed?"[4]  (*Id.*)  However, whether a roadbed is "obvious" is not the issue.  Nor does it help Plaintiff to simply allege that a road existed.  The issue is – assuming a road ran across the Conservancy Land – whether Plaintiff and her family used that road to cross the Conservancy Land in an open, notorious, exclusive and adverse manner for more than twenty years.  Nowhere does Plaintiff allege that she or her family crossed the Conservancy Land without permission – i.e., adversely to the rights of its owner.  For this additional reason, Plaintiff's claim for a prescriptive easement should be dismissed.[5]

### C.     Plaintiff Has Failed To State A Claim For An Easement By Necessity Because She Admits She Has No Idea When Or How Her Property Became Landlocked.

As explained in the United States' Opening Brief, an easement by necessity is "created when there has been a unity of ownership of the dominant and servient estates, followed by a

---

[4]The alleged roadbed was not "obvious" to Plaintiff and her family, given that Plaintiff had to rely upon *information and belief* and historical aerial photographs to even allege that such a roadbed existed.  (*See* Compl. ¶¶ 15-16.)

[5]While Plaintiff claims that "[t]here is nothing in Plaintiff's Complaint which would indicate that Plaintiff's use of the Conservancy Land was not inconsistent with the rights of the owner" (Pl.'s Br. at 11), nor is there *any affirmative factual allegation* in the Complaint that Plaintiff and her family crossed the Conservancy Land without permission.

severance into the respective parcels."  (Def.'s Op. Br. at 8 (quoting *Pencader Assocs., Inc. V. Glasgow Trust*, 446 A.2d 1097, 1099 (Del. 1982)).)  "The easement is created because the dominant estate, due to the severance, has become landlocked."  *Pencader*, 446 A.2d at 1099.  In essence, the Court presumes that "the parties intended a way-of-access to the dominant tenement over the servient tenement because it is unlikely that any one would purchase land to which there was no access."  *Id.* at 1099-1100.  Importantly, the "necessity is determined as of the time the parcels were originally separated even though the application for establishment of the easement is made by subsequent owners of the landlocked parcel."  *Id.* at 1100 (quotations omitted).

Accordingly, to state a claim for an easement by necessity, Plaintiff must allege, at a minimum, that (1) her Property was severed from the Conservancy Land; (2) as a result of that severance, Plaintiff's Property became landlocked; and (3) at the time the Property was severed, the Conservancy Land had access to a public road.  The Complaint, however, contains no such allegations.

Instead, Plaintiff admits that she has *no idea* how her Property became landlocked. (*See* Pl.'s Br. at 12 ("the land records in Sussex County are incomplete and the chains-of-title cannot be fully and completely traced at this time").  Indeed, Plaintiff alleges that it is "impossible" to determine how her Property became landlocked.  (Compl. ¶ 28.)  Given that Plaintiff thinks it is "impossible" to determine how her Property became landlocked, one wonders how a fact-finder will figure it out.  For this reason alone, Plaintiff's claim for an easement by necessity should be dismissed.  *Cf. Johnson*, 2003 WL 23021932, at *4 n.28 (noting that although public policy considerations "militate against a finding that may leave a tract landlocked. . . .  Those public policy considerations neither require nor support the burdening of

9

a fee simple interest with an easement which has no basis in law or equity.").

In her Brief, Plaintiff claims that "it is reasonable to infer, given the location of the nearest right-of-way, that Plaintiff's Property became landlocked as a result of its severance from the Conservancy Land." (Pl.'s Br. at 12.)  This wholly-speculative assertion – which is not found in Plaintiff's Complaint – should be dismissed because it is a guess.  *Cf. Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1099 (3d Cir. 1980) ("If, however, the record discloses that the evidence on which the verdict is based is so critically deficient of proof of an essential fact needed to support the verdict that the jury could only have ventured a guess about its occurrence, then a judgment notwithstanding the verdict is required.").  Moreover, Plaintiff's claim makes no sense.

Even assuming that the location of the "nearest right-of-way" is somehow relevant to the question of how Plaintiff's Property became landlocked, the proper focus would be on the nearest right-of-way *at the time of the severance*.  *See Pencader*, 446 A.2d at 1100 ("[N]ecessity is determined as of the time the parcels were originally separated even though the application for establishment of the easement is made by subsequent owners of the landlocked parcel.").  Plaintiff suggests that her Property may have been severed from the Conservancy Land as early as the 1600's.  (*See* Compl. ¶ 27.)  Surely Plaintiff is not suggesting that the alleged nearest right-of-way – "a cul-de-sac which marks the end of Bayshore Drive" (Compl. ¶ 8) – was around at the time of William Penn?

Plaintiff's claim suffers from even more defects.  First of all, it could be that at the time the Property and Conservancy Land were severed there was no public road serving the Conservancy Land – according to Plaintiff, it is "impossible" to know one way or the other.

10

(Compl. ¶ 28.)  However, as explained in the United States' Opening Brief (Def.'s Op. Br. at 9-10), if the Conservancy Land was landlocked at the time it and the Property were severed, then no easement by necessity would exist across the Conservancy Land.  *See, e.g.*, *Schmid v. McDowell*, 649 P.2d 431, 433 (Mont. 1982) ("[A] way of necessity cannot exist across land which had no access to a public road when the property was divided by the common grantor.").

Or, perhaps the Property became landlocked when it was severed from the residential properties that allegedly lie to the north.  (Compl. ¶ 6.)  Again, according to Plaintiff, we will never know what happened.  (*Id.* ¶ 28.)  However, if that were the case, then Plaintiff would have to look to the north for her claimed easement by necessity, not to the Conservancy Land.  The possibilities go on and on.  Maybe, at the time of severance, the owner of the Property accessed his or her land by water.  If that were the case, then it would not have been necessary for the owner to access the Property via the Conservancy Land and no easement by necessity over the Conservancy Land would exist.  One thing *is* clear, however.  Plaintiff cannot state a claim for an easement by necessity by simply guessing how her Property became landlocked.  Accordingly, her claim should be dismissed.

One last point is worth mentioning.  Even if Plaintiff were entitled to an easement by necessity across the Conservancy Land, that easement would *not include* the right to pave a road and run utility lines across the Conservancy Land, unless Plaintiff could show that, *at the time her Property became landlocked*, it was "absolutely necessary" that the Property be served by a paved road and utility lines.  *See, e.g.*, *Jost*, 536 A.2d at 1115 (holding that plaintiff's easement by necessity, which arose if at all in 1852, did not include the right to extend utility lines because there was no showing that such an easement was "'strictly necessary' at that time"); *see also*

11

*Pencader*, 446 A.2d at 1100 ("necessity is determined as of the time the parcels were originally separated"). According to Plaintiff, it is "impossible" to know when her Property became landlocked. (Compl. ¶ 28.) Therefore, we will never know if it was "absolutely necessary" for the Property to be served by a paved road and utility lines at that time. For this additional reason, Plaintiff's claim for an easement by necessity should be dismissed.

## II.    IN THE ALTERNATIVE, THE UNITED STATES IS ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFF'S CLAIM FOR A PRESCRIPTIVE EASEMENT.

### A.    Standard Of Review And Procedural Requirements Of Rule 56.

Summary judgment is appropriate when – as in this case – "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, the United States has directed the Plaintiff to two letters that demonstrate that Plaintiff cannot make out a claim for a prescriptive easement.[6] Accordingly, Plaintiff is not allowed to rest on her allegations – rather, she has the burden to set forth by affidavit or otherwise "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 323. Plaintiff, however, has offered no facts – by affidavit or

---

[6]Plaintiff's argument that the letters should not be considered because they are not authenticated and are hearsay should be rejected out of hand. The United States is not required to support its motion for summary judgment with admissible evidence. As the Supreme Court has held, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp.*, 477 U.S. at 323. Moreover, if Plaintiff truly believed that *her son's* letter was not authentic, all she had to do was submit an affidavit from her son disowning that letter.

otherwise – to rebut the letters submitted by the United States.  Accordingly, even if Plaintiff's

claims are not dismissed, summary judgment should be entered in favor of the United States.

*See, e.g.*, *Bailey v. U. S. Postal Serv.*, 208 F.3d 652, 655 (8th Cir. 2000) (affirming grant of

summary judgment because "Bailey, who failed to submit even a single affidavit in support of

her motion opposing summary judgment, has done nothing to counter these assertions.") (citing

FED. R. CIV. P. 56(e)).

    **B.**    **Summary Judgment Should Be Granted In Favor Of The United States On
Plaintiff's Claim For A Prescriptive Easement.**

      The first letter submitted by the United States is a letter from Plaintiff's realtor, dated

February 24, 1994, and states that Plaintiff's husband Mr. Ciabatonni owns the Property and "has

not used the land in many years."  (Def.'s Op. Br. at Ex. A.)  Accordingly, as explained in the

United States' Opening Brief, Plaintiff cannot show that she and her family used the

Conservancy Land in an open and notorious manner and therefore cannot demonstrate an

easement by prescription.  (*Id.* at 11.)

      In response, Plaintiff does not point to any specific facts – by affidavit or otherwise – to

refute this assertion by the United States.  Instead, she makes the conclusory assertion in her

Brief that Mr. Ciabattoni's "family consistently used the Property throughout his ownership."

(Pl.'s Br. at 13.)  Because Plaintiff failed to rebut the United States' motion with facts and chose

instead to rely on conclusory statements in her Brief, she violated Rule 56(e).  *See* FED. R. CIV.

P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule,

an adverse party may not rest upon the mere allegations or denials of the adverse party's

pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial."); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some *hard evidence* showing that its version of the events is not wholly fanciful.") (emphasis added). As result, the United States is entitled to summary judgment.

The second letter submitted by the United States is a letter from Plaintiff's son, dated September 10, 1999, and refers to "my fathers and I previous agreement with Mr. Jones [the previous owner of the Conservancy Land] as to a right of way or easment across his property." (Def.'s Op. Br. at Ex. B.) As explained in the United States' Opening Brief, because the previous owner of the Conservancy Land gave the Ciabattoni family permission to cross the Conservancy Land, Plaintiff cannot show that she is entitled to an easement by prescription. (*Id.* at 12.)

In response, Plaintiff again fails to point to any facts to refute the assertion by the United States. Instead, Plaintiff suggests that her son's letter is not clear and that discovery will reveal the "nature of the agreement" between the Ciabattoni family and Mr. Jones. (Pl.'s Br. at 14.) Plaintiff's argument should be rejected for two reasons. First, Plaintiff has again failed to live up to her Rule 56(e) obligation to point to "specific facts" by affidavit or otherwise that show a genuine issue for trial. For that reason alone, the United States is entitled to summary judgment.

Moreover, Plaintiff's claim that she needs discovery to uncover the "nature of the agreement" between the Ciabattoni family and Mr. Jones is curious. If Plaintiff's son meant to write anything other than what he actually wrote – i.e., that his family had an agreement with Mr. Jones to cross the Conservancy Land – than Plaintiff's son could simply say so in an affidavit.

14

That Plaintiff failed to submit such an affidavit is telling. For all these reasons, the United States is entitled to summary judgment.

### C. Plaintiff's Requests For Discovery Violate Rule 56(f) And Should Be Rejected.

Twice in her Brief, Plaintiff suggests that she could defeat the United States' motion for summary judgment if only she could take some discovery. (*See* Pl.'s Br. at 14.) This argument should be rejected for two reasons. First, Plaintiff failed to file an affidavit – as she was required to do by Rule 56(f) – demonstrating why she needs discovery to respond to the motion for summary judgment filed by the United States. *See* FED. R. CIV. P. 56(f); *see also Carter v. De. State Univ.*, C.A. No. 99-642 GMS, 2002 WL 335309, at *9 & n.10 (D. Del. Feb. 27, 2002) (granting summary judgment in part and rejecting plaintiff's "suggest[ion] that there has been insufficient discovery" because plaintiff failed to file a Rule 56(f) affidavit "demonstrating why more discovery is necessary"); *Dowling v. City of Phila.*, 855 F.2d 136, 139-140 (3d Cir. 1988) ("This court has interpreted Rule 56(f) as imposing a requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."). An unsworn memorandum opposing a party's motion for summary judgment – like the one Plaintiff filed – is not an affidavit and does not satisfy Rule 56(f). *See Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989) ("Appellants contend that their attorney's unverified memorandum opposing the motion for summary judgment complies with the Rule 56(f) affidavit requirement. It does not."). Accordingly, Plaintiff's claim that she is entitled to discovery should be rejected.

15

Moreover, Plaintiff's claim that she needs discovery to respond to the United States' summary judgment motion makes no sense. All the facts that Plaintiff needs to respond to that motion are in hers or her family's possession. For example, the first letter that the United States submitted shows that in 1994, Mr. Ciabattoni had not used the Property in "many years." Plaintiff and her family know how often they have used the Property over the years – all they needed to do to respond to the United States' motion was file an affidavit and say so. The second letter the United States submitted shows that the previous owner of the Conservancy Land gave the Ciabattoni family permission to cross the Conservancy Land. If Plaintiff thought that was not true, she could have submitted an affidavit from her son saying so. Accordingly, Plaintiff does not need discovery to respond to the United States' motion. And, in any event, she is not entitled to such discovery because she did not comply with Rule 56(f). For all these reasons, summary judgment should be granted in favor of the United States.

**CONCLUSION**

For all the foregoing reasons, the United States respectfully requests that Plaintiff's

Complaint be dismissed, or, in the alternative, that summary judgment be granted in favor of the

United States.

DATED:  March 9, 2006.

Respectfully Submitted,

COLM F. CONNOLLY
United States Attorney

By: _/s/   Seth M. Beausang_____
Rudolph Contreras
Seth M. Beausang (De. I.D. No. 4071)
Assistant United States Attorneys
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAULINE CIABATTONI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-203 (GMS) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, hereby attest under penalty of perjury that on this 9th day of March, 2006, I caused a copy of the United States' Reply Brief in Support of its Motion to Dismiss Or, in the Alternative, for Summary Judgment and Proposed Order to be served on the following counsel for Plaintiff by electronic filing:

Richard A. Forsten
KLETT ROONEY LIEBER & SCHORLING
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

        /s/ Seth M. Beausang
Seth M. Beausang (DE I.D. No. 4071)