IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAULINE CIABATTONI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-203 GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM**

**I.   INTRODUCTION**

Presently before the court is the United States' motion to dismiss, or, in the alternative, for summary judgment, pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. (D.I. 3.) On August 19, 2003, in the Court of Chancery of the State of Delaware, Pauline Ciabattoni ("Ciabattoni") filed the present action against the Nature Conservancy to obtain an easement by prescription or necessity over an adjoining parcel of property owned by the Nature Conservancy at the time the complaint was filed (the "Conservancy Land"). (D.I. 1, Ex. A at ¶ 1 (hereinafter "Compl.").)  On October 8, 2003, the Nature Conservancy transferred title to the Conservancy Land to the United States, and on March 29, 2004, the United States was substituted for the Nature Conservancy as the sole defendant in this action. (D.I. 1 ¶ 1.) Four days later, the United States removed the case to this court because United States District Courts have original jurisdiction over actions to quiet title to a real property interest claimed by the United States. (D.I. 1 ¶ 2); *see* 28 U.S.C. §§ 1442(a)(1), 1441(a), and 1346(f) (2007).

For the following reasons, the court will grant in part and deny in part the United States' motion.

## II.     FACTUAL BACKGROUND

The complaint alleges the following facts. Ciabattoni's husband took title in 1969 to certain real property located along the Delaware Bay between Primehook Beach and Fowler's Beach in Sussex County (the "Ciabattoni Property"). (Compl. ¶ 2.) The roughly rectangular Ciabattoni Property is bounded on the east by the Delaware Bay, and on the west by impassable marshland. (*Id.* ¶ 6.) To the north of the Ciabattoni Property are several residential properties, and to the south is the Conservancy Land. (*Id.*) The nearest roadway, located 2000 feet to the south (through the Conservancy Land), is a cul-de-sac which marks the end of Bay Shore Drive.[1] (*Id.* ¶ 8.) The next closest roadway lies more than 4000 feet to the north of the Ciabattoni Property through several other properties and perhaps wetlands. (*Id.* ¶ 7.) Before our nation's founding, the Ciabattoni Property and the Conservancy Land were presumably one parcel owned by the Duke of York or William Penn, (*id.* ¶ 27), but neither the parcel's owner at the time the parcel was severed nor the date of that severance can be determined. (*Id.* ¶¶ 26-28.)

As a result of her husband's death, Ciabattoni became the owner of the Ciabattoni Property, (*id.* ¶ 2), until her own death in 2004. According to the defendant, the plaintiff's counsel has informed the defendant that Ciabattoni's son, David Ciabattoni, now owns the Ciabattoni Property and continues this action against the United States. (D.I. 3 at iv, n.1.)

According to the complaint, Ciabattoni's family achieved access to the Ciabattoni Property via a roadway crossing the Conservancy Land after her husband acquired title in 1969. (Compl. ¶ 10.) The complaint also avers that at the time the Nature Conservancy took title to the Conservancy

---

[1] It is disputed whether Bay Shore Drive is a public or private right-of-way. (*See* D.I. 3 at 3, n.2.)

Land in 1999, this vehicular accessway ran from Bay Shore Drive across the Conservancy Land through the Ciabattoni Property. (*Id.* ¶ 13.) Ciabattoni further claims that when the Nature Conservancy acquired the Conservancy Land, it refused to allow the plaintiff to construct a driveway and to run utilities across the Conservancy Land. (*Id.* ¶ 12.) Ciabattoni also alleges that she and her family were trying to improve the Ciabattoni Property. (*Id.* ¶¶ 11-12.) Finally, Ciabattoni alleges that despite the Nature Conservancy's refusal, Ciabattoni and her family continued to gain access to the Ciabattoni Property "from time to time" by crossing the Conservancy Land. (*Id.* ¶ 14.)

On October 8, 2003, the United States acquired title to the Conservancy Land from the Nature Conservancy. The United States then substituted itself on March 29, 2004, for the Nature Conservancy as the sole defendant in this action. (D.I. 1 ¶ 1.)

### III.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the court to address the merits of the plaintiff's complaint. A motion to dismiss for lack of subject matter jurisdiction can take two forms: it can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *See Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For a facial attack, the court must consider the allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor; for a factual attack, the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case. *Id.* Here, the case presents a facial challenge because the United States does not attack the merits of the complaint but rather claims it to be procedurally defective.

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is

to test the complaint's sufficiency, not to resolve disputed facts or to decide the case's merits. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Thus, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir. 1988). In performing this task, however, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Nonetheless, a court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To achieve dismissal, then, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley*, 355 U.S. at 45-46.

If matters outside the pleadings are presented to and not excluded by the court, the motion to dismiss shall be converted into a motion for summary judgment, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(b). *See In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999).

**IV.    DISCUSSION**

The United States has attached two documents to its motion to dismiss.[2] But the court is not relying on such matters outside the pleadings to decide this motion, so there is no need to convert the motion into one for summary judgment. The court instead applies the motion to dismiss standard to address the United States' claims because "it would be inappropriate to convert the [defendant's] motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b), since there has been no discovery conducted in the present case." *Brug v. Enstar Group, Inc.,* 755 F. Supp. 1247, 1251 (D. Del. 1991); *see Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990). Accordingly, the court relies only on Ciabattoni's complaint and the parties' briefs in making its ruling.

**A.    12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The court first addresses the threshold question of subject matter jurisdiction. *See In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993) ("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."), *aff'd*, 39 F.3d 61 (3d Cir. 1994).

The Quiet Title Act, 28 U.S.C. § 2409a (2007), is the exclusive means by which adverse claimants can challenge the United States' title to real property. *Block v. North Dakota ex rel. Bd.*

---

[2]The first is a letter from Carole Sieber of Ackley Associates Realtors to the United States Dept. of Interior. (D.I. 3, Ex. 1.) Sieber did not date this letter, but it seems stamped "received February 24, 1994," by the addressee. (*Id.*) It states that the plaintiff's husband is listing the Ciabattoni Property for sale and he "has not used the land in many years." (*Id.*) The second is a unsigned letter dated September 10, 1999, apparently from the plaintiff's son to Mr. Roger L. Jones, Jr., State Director of the Nature Conservancy. (D.I. 3, Ex. 2.) It states that Ciabattoni's had an agreement with the Conservancy Land's previous owner to a right of way across the Conservancy Land. (*Id.*) Ciabattoni disputes both letters' authenticity and admissibility. (D.I. 14 at 13-14.)

*of Univ. and Sch. Lands*, 461 U.S. 273, 286 (1983). District Courts have exclusive jurisdiction over these actions. 28 U.S.C. § 1346(f). The United States asserts that because the present action was not brought pursuant to the Quiet Title Act, the complaint must be dismissed. (D.I. 3 at 4-5.) Ciabattoni counters that the United States was or should have been aware of this lawsuit before it acquired its interest in the Conservancy Land because Ciabattoni filed a *lis pendens*. Thus, argues Ciabattoni, the United States is bound by this proceeding. (D.I. 14 at 7-8); *see* Del. Code Ann. 25 § 1603(a) (2007). Ciabattoni further contends that since it was impossible to know that the United States would take title to the Conservancy Land, she should be allowed to amend the complaint to reflect that the action is brought pursuant to the Quiet Title Act. (D.I. 14 at 8.) The United States' reply brief does not respond to this last point. (D.I. 15.)

The United States' argument fails for the following reasons. First, while the complaint does not mention the Quiet Title Act by name, it nonetheless satisfies the Quiet Title Act's substantive requirements by "set[ting] forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title or interest" which is claimed. 28 U.S.C. 2409(a)(d). Ciabattoni specifically alleges that she is entitled to an easement by prescription or necessity, (Compl. ¶¶ 17-29), that the right arose because the Ciabattoni family has used a road that crosses the Conservancy Land to access their property for over 20 years, (Compl. ¶¶ 10, 13, 21), and that this easement exists over the land which, at the time, was owned by the Nature Conservancy. (Compl. ¶ 3.) Simply put, Ciabattoni's complaint adequately provides the United States with notice of her claim and the factual underpinnings of the action.

Further, it is true that the Quiet Title Act is the exclusive means to challenge the United

States' title to real property and that the complaint failed to reference it. When the complaint was filed, however, there was no reason make such a reference: the United States claimed no right, title, or interest as to the land in dispute at that time. The United States' argument regarding subject matter jurisdiction boils down to the nonsensical. Ciabattoni could not have brought a Quiet Title Act claim in the original complaint because the United States then claimed no interest in the land; such a claim would have been dismissed. Ciabattoni has not brought a Quiet Title Act claim, but the United States now claims an interest in the land; the complaint must therefore be dismissed. The court rejects the United States' attempt to ensnare the plaintiff in its "Catch-22"-like trap.

> **B.     12(b)(6) Motion to Dismiss for Failure to State a Claim**
>
> 1.     *Ciabattoni's Claim for an Easement by Prescription*

In Count I of the complaint, Ciabattoni alleges that she is entitled to obtain an easement by prescription over the Conservancy Land. (Compl. ¶¶ 17-21.) While Delaware continues to recognize prescriptive easements, they are generally disfavored because "they necessarily work forfeitures of existing property rights." *Anolick v. Holy Trinity Greek Orthodox Church, Inc.*, 787 A.2d 732, 740 (Del. Ch. 2001) (quoting *Berger v. Colonial Parking, Inc.*, 1993 WL 208761, at *3 (Del. Ch. 1993)). In Delaware, the prescriptive easement standard has changed slightly over time. In 1968, the Delaware Supreme Court established a standard requiring the claimant's continuous and adverse use:

> In order to establish a right of way by prescription, the party asserting the right must show, by clear and convincing proof, a continuous, uninterrupted, and adverse use, by the asserter of the right or those in privity with him, for a period of more than 20 years; and there must be no substantial interruption of the continuity of possession and enjoyment.

*Lickle v. Frank W. Diver, Inc.*, 238 A.2d 326, 329 (Del. 1968). Since then, the Delaware Chancery

Court has slightly restated this standard as a four-prong test that must be satisfied to establish a prescriptive easement: "a party must prove by clear and convincing evidence that she, or a person in privity with her, used the disputed property: (1) openly, (2) notoriously, (3) exclusively, and (4) adversely to the rights of others for an uninterrupted period of twenty (20) years." *Dewey Beach Lions Club, Inc. v. Longanecker*, 905 A.2d 128, 134 (Del. Ch. 2006)*; see Anolick,* 787 A.2d at 740 (citing *Forwood v. Delmarva Power & Light Co.,* 1998 WL 136572, at *7 (Del. Ch. 1998)). The Delaware Supreme Court, in at least one unpublished opinion, has affirmed this four-prong test. *Rowe v. Everett*, 2001 WL 1019366 (Del. Ch. 2001) (applying the four-prong test), *aff'd*, 813 A.2d 1140 (Table) (Del. 2002), 2002 WL 31833872, at *1 (Del. 2002). In upholding *Rowe*, the Delaware Supreme Court found that the lower court properly applied the law: "[t]here is nothing in the record to support Everett's contentions that the Court of Chancery committed either an error of law or an abuse of discretion when determining the existence of an easement." *Rowe*, 2002 WL 31833872, at *1 (Del. 2002). The court will therefore apply this four-prong standard.

First, as to the "open" and "notorious" prongs, the claimant's use "must be so open, visible, and apparent that it gives the owner of the servient tenement knowledge and full opportunity to assert his or her rights." *Dewey Beach*, 905 A.2d at 135 (quoting 25 Am. Jur. 2d *Easements and Licenses* § 53 (2004)). To qualify, the use must be more than occasional. *Anolick*, 787 A.2d at 742 ("Sporadic and casual uses are generally not open and notorious.") (quoting Restatement (Third) of Property: Servitudes § 2.16 cmt. h, illus. 19 (Tentative Draft No. 3, 1993)). In *Anolick*, the Delaware Court of Chancery found that the daily use of an alley as a driveway was considered to be open and notorious. *Id.* at 741. The use of that same alley for "strolls or visits to neighbors," however, was not open and notorious. *Id.* Here, Ciabattoni's complaint alleges that since 1969 she and her family

8

have gained access to the Ciabattoni Property by using a roadway that crossed the Conservancy Land. (Compl. ¶¶ 10, 13.) Ciabattoni also alleges that the Conservancy Land's prior owner was on notice of Ciabattoni's use of the land because the vehicular accessway in question was readily apparent. (*Id.* ¶ 13.) Thus, the facts alleged, and reasonable inferences that may be drawn from them, are sufficient to show that the Ciabattoni's use was open and notorious.

As to the third prong, a use is exclusive only if it is exclusive as against the public at large. *Id.* at 740 n.15 (citing *Marta v. Trincia*, 22 A.2d 519, 520 (Del. Ch. 1941)). In *Anolick*, both the Anolicks and owners of neighboring parcels used the alleyway. *Id.* The Delaware Court of Chancery found that this shared use was nonetheless exclusive against the general public. Here, since the complaint alleges that the plaintiff's family used this roadway and makes no mention that others used the roadway, it may be inferred that no member of the general public used this accessway to cross the Conservancy Land and reach the Ciabattoni Property.[3]

As to the fourth prong, a use is adverse or hostile if it is inconsistent with the rights of the owner. *Berger*, 1993 WL 208761, at *4. Neighborly or friendly use of a roadway does not establish adverse use. *Dewey Beach*, 905 A.2d at 136. In *Dewey Beach*, a roadway maintained by a landowner for his own use, but used by his neighbor in a way that did not interfere with the landowner's use, did not create a presumption of adverseness. *Id.* Here, nothing in the complaint suggests that Ciabattoni's use was permissive or neighborly. *Cf. Dewey Beach*, 905 A.2d at 136. Based on the facts as pleaded, the court could infer that the use was adverse. *See Cartanza v. Lebeau*, 2006 WL 903541, at *3 (Del. Ch. 2006) ("[w]here the use of the disputed property is open

---

[3] Of course, contrary facts may be developed during discovery, but that is a subject for another day.

and visible and there is no semblance of proof that the use was permissive, a court may find the use adverse"); *see also Cordrey v. Dorey*, 1996 WL 633293, at *4 (Del. Ch. 1996); *Marta*, 22 A.2d at 520. In *Cartanza*, the plaintiff adequately pleaded adverse use based on (i) averments of open and visible use of a drainage ditch running under the plaintiff's and his neighbor's property, and (ii) nothing in the complaint suggesting that such use was permissive. *Cartanza*, 2006 WL 903541, at *3. At this point in the proceedings, all facts and inferences are drawn in the light most favorable to the non-moving party, so the court looks only to the complaint to determine whether there is a "semblance of proof that the use was permissive." *Id.* Because the complaint makes no mention that the use was permissive it can be presumed, at this point, to be adverse.

Regarding the requirement that the use be uninterrupted or continuous for a period of 20 years, such use "does not mean constant use but simply the exercise of the claimed right more or less frequently according to the nature of the use." *Berger*, 1993 WL 208761, at *3. For example, in *Taylor v. Council of South Bethany*, 1996 WL 117650 at *1 (Del. Ch. 1996), *aff'd*, 692 A.2d 415 (Del. 1996), the defendants used an inundated portion of the plaintiffs' property as a boat turnaround. The court found this "intermittent" use to be sufficiently continuous to establish an easement, remarking that "[i]t is of no moment [d]efendants' use has not been incessant." *Id.* Put another way, only a "substantial interference can defeat a prescriptive easement." *Berger*, 1993 WL 208761, at *3. As stated above, Ciabattoni has alleged that her family has crossed the Conservancy Land to achieve access to the Ciabattoni Property since 1969. (Compl. ¶ 10.) Further, the plaintiff claims that since the Nature Conservancy refused to allow the plaintiff to improve her property in 1999, her family has continued to cross the Conservancy Land to reach the Ciabattoni Property from time to time. (*Id.* ¶¶ 12, 14.) Viewing the complaint in the light most favorable to the plaintiff, it

10

does not "appear to a certainty that no relief could be granted under any set of facts which could be proved." *Morse*, 132 F.3d at 906.

The plaintiff has stated more than "bald assertions" or "legal conclusions." *Morse*, 132 F.3d at 906. From the above averments, it could be inferred that the plaintiff's use was open, notorious, exclusive, and hostile for an uninterrupted period of 20 years. Accepting as true all allegations and viewing all reasonable inferences in the light most favorable to the plaintiff, the court determines that the plaintiff has sufficiently stated a claim upon which relief can be granted. The motion to dismiss Count I is therefore denied.

    2.    *Ciabattoni's Claim for an Easement by Necessity*

Count II seeks an easement by necessity over the Conservancy Land. (Compl. ¶¶ 22-29.) Such an easement "is created when there has been a unity of ownership of the dominant and servient estates, followed by a severance into the respective parcels." *Pencader Assocs., Inc. v. Glasgow Trust*, 446 A.2d 1097, 1099 (Del. 1982). The easement is created because the severance has left the dominant estate landlocked. *Id.* "The easement [by necessity] is not actually created by the necessity; rather the necessity is . . . a fact offered in evidence to show an intention to establish a right of way by raising the presumption of a grant of access to the dominant estate over the servient estate." *Id.* (citing *Shpak v. Oletsky*, 280 Md. 355, 360, 373 A.2d 1234, 1238 (1977) (internal quotations omitted)). The necessity is determined as of the time the parcels were severed, even if subsequent owners of the parcel apply to establish the easement. *Id.* at 1100. The plaintiff bears the burden of proof, and the proof must be sufficient to show an absolute necessity, *id.*, by clear and convincing evidence. *See Ayres v. Walker*, 1991 WL 225054, at *2 (Del. Ch. 1991), *aff'd* 622 A.2d 1097 (Del. 1993); *see also Pencader Assocs., Inc. v. Glasgow Trust*, 1992 WL 50872, at *1 (Del.

Ch. 1992); 11 Am. Jur. Proof of Facts 3d 601 (2007).

Ciabattoni alleges that the Ciabattoni Property is "landlocked," and that at some point in the past a single owner severed the Ciabattoni Property and the Conservancy Land. (Compl. ¶¶ 24-27.) But Ciabattoni admits that it is "impossible" to determine the identity of this single owner. She speculates that it could very well have been the Duke of York or William Penn himself. (*Id.* ¶¶ 27-28.) This allegation is nothing more than speculation and is, as such, insufficient as a matter of law. The plaintiff must allege specific facts as to the common grantor's identity and the easement's necessity arising at the time two parcels were severed. *Pencader Assocs., Inc.*, 446 A.2d at 1099-1100. Instead, Ciabattoni candidly admits that the chains-of-title cannot be fully traced and therefore these facts cannot be shown. (Compl. ¶ 26.)

Since the plaintiff is unable to allege specific facts as to (i) when the parcels were severed and (ii) the identity of the single owner at the time of severance, her claim cannot satisfy the elements for an easement by necessity. Therefore, the United States' motion to dismiss Count II is granted.

V.  **CONCLUSION**

For the aforementioned reasons, the court will deny the United States' motion to dismiss for lack of subject matter jurisdiction, and grant in part and deny in part the United States' motion to dismiss for failure to state a claim upon which relief can be granted.


Dated: January 7, 2008              /s/ Gregory M. Sleet
                                    CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAULINE CIABATTONI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-203 GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*ORDER*

1. The defendant's motion to dismiss for lack of subject matter jurisdiction, (D.I. 3), is DENIED, and its motion to dismiss for failure to state a claim, (*id.*), is DENIED with respect to Count I of the complaint and GRANTED with respect to Count II of the complaint.


Dated: January 7, 2008          /s/ Gregory M. Sleet
                                CHIEF, UNITED STATES DISTRICT JUDGE