UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAULINE CIABATTONI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-203 (GMS) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

**THE UNITED STATES' MOTION FOR RECONSIDERATION**

COMES NOW, the United States, by and through its undersigned counsel, Colm F. Connolly, United States Attorney, and Seth M. Beausang, Assistant United States Attorney, and respectfully asks the Court to reconsider its Memorandum Opinion and Order dated January 7, 2008, in which the Court declined to dismiss Count I of Plaintiff's Complaint (the prescriptive easement claim). In support of its Motion, the Government states the following:

1.  A motion for reconsideration may be granted "to correct a clear error of law or fact or to prevent manifest injustice." Boyer v. Taylor, No. 06-694-GMS, 2007 WL 3407417, at *5 (D. Del. Nov. 14, 2007). Reconsideration may be appropriate when the Court has "patently misunderstood a party" or "overlooked certain arguments." Id.; Buffa v. NJ State Dep't of Judiciary, No. 01-4094, 56 Fed. App'x 571, 575 (3d Cir. Jan. 14, 2003) (affirming district court's decision to grant reconsideration because the district court "overlooked certain arguments, factual admissions, and relevant caselaw"). A motion for reconsideration should not ask the Court to rethink a decision and should not present new facts and issues. Boyer, 2007 WL 3407417, at *5.

2.  The Government argued in its Opening and Reply Briefs that Count I should be

dismissed because, among other reasons, the prescriptive easement that Plaintiff seeks – i.e., an easement that would allow her to build a roadway "sufficient to allow routine vehicular access (as well as construction vehicles during construction), and underground . . . utilities lines for electric and phone" (Compl. ¶ 29) – is far broader than any prescriptive use alleged in the Complaint. (See Doc. No. 3 at 4 n.3; Doc. No. 15 at 6-7.) Even though the Plaintiff had no response to this argument in her Answering Brief, it appears the Court did not address this point in its Memorandum Opinion.

    3.    It is well-settled in Delaware and elsewhere that "where the attempted use [of a property] is not reasonably related to the user under which the [prescriptive] right was acquired such attempted enlargement of use will not be permitted." Biggs v. Wolfe, 178 A.2d 482, 485 (Del. Ch. 1962); see also Lofland v. Truitt, 260 A.2d 909, 913 (Del. Ch. 1969) (holding that the plaintiffs had established a limited prescriptive easement to cross the servient property for "swimming, hunting, skating, fishing and other similar outdoor recreations, as well as for gathering firewood, and operating a saw mill," but had not established a prescriptive easement to cross the property to build summer cottages or permanent residences).[1]

---

[1] See also Leichtfuss v. Dabney, 122 P.3d 1220, 1227 (Mont. 2005) ("Furthermore, the scope of an easement gained by prescription is constrained by – i.e., may not exceed – the character and extent of the use made of it during the prescriptive period."); Interior Trails Preservation Coalition v. Swope, 115 P.3d 527, 530 (Alaska 2005) (recognizing the "settled principle that the scope of a prescriptive easement is limited to the manner in which it was established"); Limestone Development Corp. v. Village of Lemont, 672 N.E.2d 763, 768 (Ill. App. Ct. 1996) ("All easements are limited and qualified by the use that established the prescriptive right."); Crane v. Hayes, 417 S.E.2d 117, 120 (W. Va. 1992) (holding that the "prescriptive easement is limited to the uses to which the road was put during that prescriptive period, specifically, agricultural, gathering of firewood, checking fences, and the use of small machinery to clear the roadbed" and further holding that "the appellees' proposal to use the road as access to residential property constitutes an additional burden upon the road which cannot be held to be within the parameters of the prescriptive easement which was created through ten

4. In Biggs, for example, Wolfe had a prescriptive easement to use a road to cross the servient property to reach the dominant property (i.e., the landlocked property) to cultivate and remove crops therefrom. Biggs, 178 A.2d at 485. Wolfe then subdivided a portion of the landlocked property and sold lots for building purposes. Id. Carter purchased one of the lots and began using the road "as a means of ingress and egress to and from his property, that is, as a driveway." Id. The Court of Chancery held that Carter's use of the road as a driveway "was foreign to that under which the right-of-way by prescription was acquired," and accordingly granted an injunction forbidding Carter from using the road. Id. at 486.

5. Similarly, in Limestone Dev. Corp. v. Village of Lemont, the public had a prescriptive easement to use a road to cross the servient property to access the landlocked dominant property for "recreational purposes such as fishing, swimming, camping, and picnicking." Limestone, 672 N.E.2d at 768-69. The court concluded that this prescriptive easement did not allow a company to drive construction vehicles over the road in order to

---

years of usage"); United States on Behalf of Zuni Tribe of NM v. Platt, 730 F. Supp. 318, 324 (D. Ariz. 1990) ("The scope of a prescriptive easement is determined by the use through which it is acquired."); Jost v. Resta, 536 A.2d 1113, 1115 & n.2 (Me. 1988) (holding that a prescriptive easement established for vehicular access did not include the right to install utility lines); Bentel v. County of Bannock, 656 P.2d 1383, 1386 (Idaho 1983) ("prescriptive easements are strictly limited to the actual use which gave rise to the easement"); Dennis v. French, 369 A.2d 1386, 1388 (Vt. 1977) ("the owner of an easement cannot materially increase the burden of it upon the servient estate, nor impose a new or additonal burden thereon"); Stickle v. Link, 511 S.W.2d 848, 854 (Mo. 1974) ("the character and extent of a prescriptive easement right is determined by the character and extent of the user during the prescriptive period"); Johnson v. Roy, 279 S.W.2d 20, 21 (Ky. 1955) ("It is the rule that where an easement is acquired by prescription or use, as here, such an easement exists only to the extent of the use."); Hannah v. Pogue, 147 P.2d 572, 574 (Cal. 1944) ("The scope of a prescriptive easement is determined by the use through which it is acquired."); 25 AM. JUR. 2D Easements and Licenses § 81 (2007) ("The character and extent of a prescriptive easement generally is fixed and determined by the use under which it was acquired.").

construct a recreational marina on the landlocked proprty.  Id. at 769 ("Those uses go far beyond the public's use of the canal road to access the quarry area for recreational purposes and to visit people who lived in shacks along the canal."); see also Lofland, 260 A.2d at 913 (holding that a prescriptive easement to cross a property for recreational purposes did not include a right to cross the property to build summer cottages or permanent residences).

6.      As noted above, here Plaintiff seeks a prescriptive easement to allow her to do three things – (1) build a roadway accross the Conservancy Land to allow "routine vehicular access" (Compl. ¶ 29), in other words, as Plaintiff says, she wants to build a "driveway," (id. ¶ 14); (2) build a roadway across the Conservancy Land to allow "construction vehicles" to pass, (id. ¶ 29); and (3) install underground utility lines for electric and phone across the Conservancy Land, (id. ¶ 29).  Plaintiff candidly admits that she wants to cross the Conservancy Land to build a dwelling on her property.  (Id. ¶ 11.)

7.      However, all Plaintiff alleges is that she has "gained access" to her property "by crossing the Conservancy Land" since 1969 (id. ¶ 10), and that "from time to time" since 1999 Plaintiff and her family have "continued to cross the Conservancy Land to reach the Property," (id. ¶¶ 12, 14).  Plaintiff does not allege that she ever used the Conservancy Land as a "driveway" or to provide "routine vehicular access" to her property, nor could she allege that – to have a driveway first you need a dwelling, and there is no dwelling on the property.  Indeed, Plaintiff admits that Government did not allow her to build a "driveway" across the Conservancy Land. (Id. ¶ 14.)  Furthermore, Plaintiff admits that she never used the Conservancy Land to transport construction vehicles to her property (given that she admits the property is unimproved), and she also admits that she never built utility lines across the Conservancy Land.  (Id. ¶¶ 11-12.)  As a

result, even if one assumes the truth of every allegation and reasonable inference in the Complaint, Plaintiff still would not be entitled to the prescriptive easement that she seeks.

8. In Biggs, the owner of a lot on the landlocked property tried to do exactly what Plaintiff is trying to do here. Namely, the owner in Biggs attempted to use a road that crossed a servient property as a driveway, even though the road had not previously been used that way. The Court of Chancery held that the owner could not use the road as a driveway. Biggs, 178 A.2d at 486. Just like the Court of Chancery did in Biggs, this Court should hold that whatever prescriptive easement the Plaintiff may have – assuming she has an easement – the easement does not include the right to use the Conservancy Land as a driveway.

9. In Lofland, the owner of a landlocked property wanted to drive construction vehicles over a road that crossed the servient property so the owner could build summer cottages or permanent residences on the landlocked property. Plaintiff is trying to do the same thing here. In Lofland, the Court of Chancery held that the plaintiff's prescriptive easement did not include the right to drive construction vehicles across the servient property because the easement had never been used that way before. Lofland, 260 A.2d at 913. Just like the Court of Chancery did in Lofland, this Court should hold that whatever prescriptive easement the Plaintiff may have – assuming she has an easement – the easement does not include the right to drive construction vehicles over the Conservancy Land.

10. In Jost, the Supreme Judicial Court of Maine affirmed that the plaintiff had a prescriptive easement over the servient property. However, the court held that the easement did "not include a right to extend utilities" across the servient property because the easement had never been used that way before. Jost, 536 A.2d at 1115 & n 2. Here, Plaintiff admits that no

utilities run across the Conservancy Land. Accordingly, just like court did in Jost, this Court should hold that whatever prescriptive easement the Plaintiff may have – assuming she has an easement – the easement does not include the right to install utility lines over the Conservancy Land.

11.     For all of the above reasons, the Government respectfully submits that even if Plaintiff could prove that she has a prescriptive easement over the Conservancy Land, Plaintiff cannot prove that she has an easement to do the things she wants to do, i.e., use the Conservancy Land as a driveway, and allow construction vehicles and utility lines to pass over the Conservancy Land.

WHEREFORE, the Government respectfully asks the Court to reconsider its Memorandum Opinion and Order dated January 7, 2008, and dismiss Count I of Plaintiff's Complaint for failure to state a claim upon which relief can be granted. In the alternative, the Government asks that the Court reconsider its Memorandum Opinion, grant the Government's Motion to Dismiss Count I in part, and dismiss Count I to the extent it seeks a prescriptive easement that would allow Plaintiff to pass construction vehicles and utility lines over the Conservancy Land.[2]

---

[2] Given that Plaintiff's admitted purpose in filing this lawsuit is to cross the Conservancy Land to construct a dwelling on her property, granting the Government's Motion to Dismiss in part and denying Plaintiff the right to pass construction vehicles and utility lines over the Conservancy Land may effectively end this lawsuit without burdening the parties with unnecessary discovery and further delays.

DATED: January 11, 2008.                              Respectfully Submitted,

                                                COLM F. CONNOLLY
                                                United States Attorney

                                        By: /s/  Seth M. Beausang
                                            Seth M. Beausang (De. I.D. No. 4071)
                                            Assistant United States Attorney
                                            District of Delaware
                                            1007 Orange Street, Suite 700
                                            Wilmington, DE 19801